GEORGE H. HAZLEHURST, receiver, plaintiff in error *vs.* MATTHEW R. FREEMAN, trustee, defendant in error.

The Macon and Brunswick Railroad Company, under its charter and its amendments, authorizing it to construct a railroad from the city of Brunswick to the city of Macon, and clothing it with the rights, priv-

Hazlehurst *vs.* Freeman.

ileges and immunities of the Central Railroad, is authorized to construct its road into the city of Macon, and is not limited to the city line, and a private citizen cannot enjoin it from appropriating ground for the location of its track, because of its want of authority to come within the city lines.

Railroads.  Charter.  Before Judge HILL.  Bibb county. At chambers.  October 18th, 1873.

The sole question made by this case is whether the Macon and Brunswick Railroad Company had the authority, under its charter, to construct its railroad into the city of Macon. Matthew R. Freeman, as trustee for his wife, owned certain city lots through which the road would pass, and sought to enjoin George H. Hazlehurst, the receiver of said company, from appropriating said property for that purpose.

No question was made as to compensation.

The chancellor ordered the injunction to issue, and defendant excepted.

WHITTLE & GUSTIN, for plaintiff in error.

LANIER & ANDERSON, for defendant.

McCAY, Judge.

This case turns entirely upon the construction of the charter of the Macon and Brunswick Railroad Company.  It is by that charter authorized to construct and maintain a railroad from Brunswick to the city of Macon.  It is contended, and such, as we understand, was the opinion of the court, that under this charter the company could only construct a road from the outermost limit of Brunswick to the outermost limit of Macon, and that it had no authority to enter with its road within the lines of either city.  From and to, it is contended, in their legitimate sense, mean only from outside to outside. We do not agree with this construction of the charter.  In the first place that is not always the meaning of the words. If I say I shall, to-morrow, go to Macon, I may most naturally be understood to mean I am going *into* the city, and if

I say I have come from Macon, those who hear me most naturally understand that I have come from *within* the city.    If I give my son leave to go to the court-house, I should do him great injustice if I found fault with him for going within the doors.    The truth is, these two words, in and from, have not in our language, any such rigid meaning as is contended for. If I say I have to day received a letter from, or have sent a letter to, England, I may fairly be understood to mean by to or from, any place within the confines of England.    Indeed, it would be a misuse of words to say I have written a letter into England.    From and to may mean from outside to outside, but ordinarily they mean more than this.    The truth is, like the particles of every language, they get their several shades of meaning from the subject matter and the context. If at a distance from a city, I say I am going to it, I mean into it.    If I am on the borders, I should say, to express the same idea, I am going into the city.    If I were to hire a man to carry me to Augusta, and he were to drop me at the city line, I should feel that he had not kept his contract.

We give these instances to illustrate our meaning.    "From" and "to" do not have a precise, fixed meaning, but may mean from within, and into.    With this understanding of the words of the charter, let us now inquire into the probable meaning of the legislature in the use of them.    The great object of the legislature, in the charter of this road, was to get another route from the interior to the seaboard.    Can it be supposed that it was contemplated that the road should stop at the limits of the city of Brunswick, or that it should not connect with the connecting roads at Macon?    The day had gone by in this state, at the time this charter was granted, when any such hindrance to the free passage of people and freight would for a moment have been countenanced.    For a while, in the history of railroad legislation, such things were possible. Local interests were allowed to obstruct the free passage of freight from the producer to a market, but such hindrances belong to the past, and the public interest has long since asserted itself; so that, for years past, such obstructions have

been, one by one, yielding to the outcry against them, and it would now be assuming that a legislature was trifling with the wants of the community were it to be guilty of doing so foolish a thing.

It is a fair rule of construction to say that the company has, by its charter, such rights as are necessary to make the express rights granted it effective. With no right to enter within the limits of the two cities which it was the object of the charter to connect, the right to run the road would be seriously hampered. That a railroad company, and the freight and passengers it carries, should, in this day, be compelled to resort to drays to carry its freight and passengers through Macon and Brunswick, is so absurd that we cannot presume, unless the language were express, such was the intention of the legislature. But as they have used words which, by common usage, import capacity to go into both cities, we think it right to give them the meaning that common sense and the public interest requires; and we do this the more freely, because we have the authority of respectable courts for it, though it must be admitted there are decisions the other way. In 6 Paige, 554, it was held that "at or near" might, according to the facts, mean also "within." In Richmond *vs.* Dayton, 10 John. Rep., 393, the words were, "to the city of Hudson," and the court, among whom was KENT, judge, decided that the word "to" meant "into." And there is a case in 1 Strange, 179, Rex *vs.* Norwich, where a charter extended the city line "*usque ad*" a certain bridge, and the court held that "*usque ad*"—"continuously to"—included the bridge.

Judgment reversed.