## PEOPLE *v.* KLAMMER.

CRIMINAL LAW—LARCENY FROM BUILDING—INFORMATION—WORDS —CONSTRUCTION.
>   An information charging larceny "from the residence" of M., sufficiently charges the offense denounced by 3 Comp. Laws, § 11551, prohibiting larceny by stealing "in any building" on fire.

Exceptions before judgment from St. Clair; Tappan, J. Submitted April 21, 1904. (Docket No. 191.) Decided July 27, 1904.

Otto Klammer was convicted of larceny from a burning building. Affirmed.

*John M. Kane* (*C. A. Hovey,* of counsel), for appellant.

*Burt D. Cady,* Prosecuting Attorney, for the people.

GRANT, J. Respondent was convicted under section 11551, 3 Comp. Laws, which provides that, "every person who shall commit the offense of larceny by stealing in any building that is on fire, shall be punished," etc. The

information charged the respondent with the larceny of "one open-faced ladies' watch and one ladies' chain, of the value of twelve dollars, of the goods, chattels, and property of, and in the possession of, one Sarah McMillan, from the residence of the said Sarah McMillan, No. 2,721 Wright street, Port Huron, * * * the same being then and there on fire."

The court instructed the jury that they must be satisfied beyond a reasonable doubt that the defendant stole the watch, and that it was stolen from some part of the burning building. Respondent made a motion in arrest of judgment, claiming that the word "residence" is not synonymous with "building," and the word "from" is not synonymous with "in." These are the only questions raised upon the record. It is contended in the brief of the people that no objection was made upon the trial to the sufficiency of the information, and the objections now made were first made upon the motion in arrest of judgment. The record is silent upon this point. Without determining, however, whether the objections come to late, we think that they are not sound. Whether the term "residence" may sometimes be used without reference to the dwelling wherein a party lives, it would be doing violence to the ordinary use of language and to ordinary intelligence to hold that in this information it does not mean a building. Vacant lots are not the residences of persons. The information fixes the residence of the owner of the property at a given numbered lot in a city. This implies that the party lived in a dwelling house upon that lot. Persons do not reside on or in vacant lots. The respondent so understood it, and the case was tried upon that theory.

The second point is equally without merit. The word "from," used in the information, implies that the property was taken from within the building. That the word is often used interchangeably with "in," and is so commonly used, appears from *People* v. *Wilson*, 55 Mich. 506, 516 (21 N. W. 905, 909), where Chief Justice COOLEY,

in discussing the case, says: "It may be questionable whether the larceny in this case was not larceny *from* a store, and therefore compound larceny, under 2 How. Stat. § 9137"—that being a similar statute to the one under which the respondent in this case was convicted. The learned Chief Justice used the word "from" as synonymous with "in." It was held in *O'Connor* v. *City of Fond du Lac*, 109 Wis. 253 (85 N. W. 327, 53 L. R. A. 831), that the word "from" has no certain literal or legal meaning that can be accepted as a guide under all circumstances. In *Re Lewis*, 124 Mich. 199 (82 N. W. 816), the commitment recited that the defendant was convicted of larceny from a store, and the precise point was raised to invalidate the commitment as is raised here. This court held that the conviction was valid. I have examined the judgment entry and information in that case. The judgment entry recites that the respondent was convicted "of the crime of larceny from a store." The docket entry in the circuit court reads, "Information for larceny from a store." The information charges that the respondent did "steal, take, and carry away the property from the said store." It is true that in another part of the information the property is described as "then and there situate and being found in the store," but the offense is described as "larceny from the store." See, also, *Bailey* v. *State*, 99 Ala. 143 (13 South. 566).

I do not think that *People* v. *Rathbun*, 105 Mich. 699 (63 N. W. 973), bears any analogy to this case. "Unto a jail," or "unto a building" is not a common form of expression, and in no popular sense has it ever been used to mean to convey within a building. Probably no case can be cited where that word has ever been construed to be synonymous with or to mean "into." But the word "from" has a popular meaning, indicating an entrance into the building from which the property is taken. When one says that A. stole his horse or his harness from his stable, or his ox from his barn, or his grain from his granary, it is the common understanding of mankind that he

137 MICH.—26.

means that the thief entered his stable, or his barn, or his granary, and took the property from within. Can the language of Chief Justice COOLEY, in the case above cited, be explained upon any other theory? If one left his wagon, or his harness, or his grain outside his buildings, and in his yard, he would not say that the thief stole the property from his building, but that he stole it from his yard. The word "to" is held to mean "into"—as where a corporation was authorized to construct a road "to the city of Hudson" it was held that the word "to" meant "into." *President, etc., of Farmers' Turnpike Road* v. *Coventry*, 10 Johns. 389.

The conviction is affirmed.

The other Justices concurred.