COCA-COLA BOTTLING COMPANY OF ARKANSAS *v.* COCA-COLA BOTTLING COMPANY.

Opinion delivered February 23, 1931.

*Coleman & Riddick,* for appellant.

*Hays & Smallwood,* for appellee.

KIRBY, J., (after stating the facts). The only issue involved in this appeal is whether the court erred in holding that appellee company owned the exclusive right to bottle and sell bottled Coca-Cola in Paris under its contract.

The intention and rights of parties under a contract must be determined as they existed at the time the contract was executed, the cardinal rule for construction and interpretation being that the intention of the parties shall be effectuated, as gathered from the whole context of the agreement. *Glover* v. *Bullard,* 170 Ark. 58, 278 S. W. 645; *Fort Smith Light & Traction Co.* v. *Kelley,* 94 Ark. 161, 127 S. W. 975; *Temple Cotton Oil Co.* v. *Southern Cotton Oil Co.,* 176 Ark. 608, 3 S. W. (2d) 673.

"Courts may acquaint themselves with persons and circumstances that are the subjects of the statements in the written agreement, and are entitled to place themselves in the same situation as the parties who made the contract, so as to view the circumstances as they viewed them, and so as to judge of the meaning of the words and of the correct application of the language to the things described." *Inter-Southern Life Ins. Co.* v. *Shutt,* 175

Ark. 1161, 1 S. W. (2d) 801. See also *Maloney* v. *Maryland Casualty Co.,* 113 Ark. 174, 167 S. W. 845.

The undisputed testimony shows that appellee had been serving Paris with Coca-Cola for more than 4 years prior to the execution of its present contract, and that on the date of its execution there was no rail connection whatever between Little Rock and Paris, the only connection by rail being the Arkansas Central Railroad, which extended only from Paris to Fort Smith, and which was used in serving the Paris territory in the beginning.

Meek, one of the lessors, testified that he had secured the same territory in the last contract that he had been serving under the first with some additional, the description being, "also the territory along the Arkansas Central Railroad from Fort Smith to Paris."

Appellant insists that the word "to" used in this description is a term of exclusion unless there was something in the connection which makes it manifest that it was used in a different sense, and cites in support thereof 9 C. J. 153 and *Breashear* v. *Norman,* 176 Ark. 26, 2 S. W. (2d) 53.

The court held, however, and correctly so under the circumstances of this case, the situation and relation of the parties considered, that the word "to" and the sense in which the word is commonly understood is inclusive rather than exclusive. *Bennett Lumber Co.* v. *Walnut Cypress Co.,* 105 Ark. 421, 151 S. W. 275; *Hastings Industrial Co.* v. *Copeland,* 114 Ark. 415, 169 S. W. 1185; *Bloch Queensware Co.* v. *Smith,* 107 Mo. 13, 80 S. W. 592. The Supreme Court of Missouri stated in the above mentioned case: "The word 'to' has no specific meaning in a legal sense, although it is a word of exclusion. Its meaning is ascertained from the reason and sense in which it is used."

In *Union Pacific Rd. Co.* v. *Hall,* 91 U. S. 343, 23 L. Ed. 428, the Supreme Court of the United States said the words "from," "to" and "at" are taken inclusively according to the subject-matter. See also *President, etc.,*

*of Farmers' Turnpike Road* v. *Coventry,* 2 Johns (N. Y.) 389; *Hazelhurst* v. *Freeman,* 52 Ga. 244; *People* v. *Klammer,* 137 Mich. 399, 100 N. W. 600; *Rio Grande R. Co.* v. *Brownsville,* 45 Tex. 88; *McCartney* v. *Chicago & Evanston R. R. Co.,* 112 Ill. 611; 8 Words & Phrases, first series, page 6986; 4 Words & Phrases, second series, page 930.

In *National Equity Life Ins. Co.* v. *Bourland,* 179 Ark. 398, 16 S. W. (2d) 6, this court said: "It is a well-established principle of law that, in the interpretation or construction of contracts, the construction the parties themselves have placed on the contract is entitled to great weight and will generally be adopted by the courts in giving effect to its provisions. This is especially true in case of ambiguity in the written contract." See also *Temple Cotton Oil Co.* v. *Southern Cotton Oil Co.,* 176 Ark. 601, 3 S. W. (2d) 673; and *Webster* v. *Telle,* 176 Ark. 1149, 6 S. W. (2d) 28.

From 1910 to 1928, a period of 18 years, the appellee company and its predecessors served the people of Paris without objection from the Bellingraths, lessors of appellant company. Meek testified that he had no knowledge that they made any claim to the territory of Paris until he received their letter of June 23, 1928. Meek had made two sub-bottlers' contracts with parties in the Paris territory, which had been approved by the present company, and had never been questioned by Bellingrath. Early in 1927, when the concrete highway was being completed from Dardanelle to Fort Smith and offering greater facilities for transportation of bottled Coca-Cola, the Bellingraths wrote a letter, the letter of May 30, 1927, questioning the right of appellee company to furnish Coca-Cola to several small towns west of Dardanelle, Paris not being mentioned therein. By letter of June 3, 1927, answering Meek's request for a definite statement of the territory claimed Bellingrath wrote, "the points in question are points lying east and southeast of Paris, namely, Corley, Subiaco, Ellsworth, Blaine, Delaware and other points in this vicinity."

Appellee's contract for its territory was prepared by attorneys for the Georgia Coca-Cola Company, and the rule is, "in construing a written contract it should be interpreted more strongly against the party who prepared it." *Morley* v. *Hackler,* 176 Ark. 238, 3 S. W. (2d) 20.

It follows from the application of the principles announced that the court correctly construed the contract, and did not err in affording the relief appellee prayed and was entitled to. We find no error in the record, and the judgment is affirmed.