STERNBERG v. SNOW KING BAKING POWDER COMPANY, INC.

4-2919

Opinion delivered March 13, 1933.

1162

*George W. Dodd,* for appellant.

*I. J. Friedman,* for appellee.

MEHAFFY, J. This is a suit in replevin brought by the appellee against Browne-Brun Wholesale Grocery Company. The appellee alleged that it was the owner and entitled to the immediate possession of 259 cases of baking powder, and four nose trucks. It was alleged that the goods were placed with the appellant on consignment.

The following is the instrument under which the Browne-Brun Wholesale Grocery Company acquired possession of the goods:

| "Ship. | | Date | SNOW KING | |
|---|---|---|---|---|
| | | | JOBBER AGENCY PLAN | |
| "Browne-Brun Who. Gro. Co. | | | Nov. 12, 1931. | |
| "Ft. Smith, Ark. | | | ADVERTISING PREMIUMS | |
| "Cases | Size | Cans | Price | Chain-10 |
| 50 | 10c | 48 | 3.70 | Pana-5 |
| 250 | 20   25c | 24 | 4.60 | Truck-5 |
| 25 Introductory Free | | | | |

12/15/31  1/3 Billed 30 days—less 2%
1/15/32  1/3 Billed 60 days—less 2%
2/15/32  1/3 Billed 30 days—less 2%   Less 17% and 2%
   (Stamped on face: Nov. 16, 1931.  22647)

### "CONDITIONS AND AGREEMENT

"1.   All orders on Snow King Baking Powder are to be shipped from jobber's stock, including all orders for advertising premiums taken by the Snow King salesman, or the jobber's salesman.

"2.   The Snow King Baking Powder Company agrees to supply the jobber with advertising premiums free of charge.  As these advertising premiums offers change from time to time, only a limited supply of these premiums are sent along with this order, but the premiums are sent to the jobber, without any cost to him, whenever new deals are put into effect and whenever new premiums are offered to the trade as long as this arrangement is in effect.

"3.   Only jobbers operating under this plan are privileged to fill Snow King orders from their stocks. Jobbers' salesmen are notified of new deals and new premium offers from time to time when they are brought out by the Snow King Baking Powder Company.

"4.   The Snow King Baking Powder Company reserves the right to withdraw this agreement, if it is impossible to effect savings by not shipping into this territory in either pool car shipments, or solid cars, because this extra profit to the jobber is only possible due to the savings in freight which the Snow King Baking Powder Company can make.

 (In pencil as follows): "If any of the above payments become due before same being sold, payments to be deferred 30 or 60 days or longer if necessary or until this stock is sold by the jobber.

"Signed:

"Bowling

"The Snow King Baking        "Signed:
   Powder Co.                "Browne-Brun Gro. Co.
"Cincinnati, Ohio.             "Fred Browne."

The Browne-Brun Wholesale Grocery Company was adjudicated a bankrupt after suit was brought, and Henry Sternberg, trustee in bankruptcy, was substituted as defendant. The case was tried before the circuit judge sitting as a jury, and, after hearing the evidence, the court took the case under advisement, and afterwards rendered judgment in favor of the appellee. The case is here on appeal.

At the time of the hearing, appellee offered certain evidence which was excluded, some of which the court afterwards considered. The appellant requested the court to find as follows:

"(a) That the baking powder involved in the suit was sold to the grocery company, and title passed upon delivery;

"(b) That the contract in this case is evidenced by a written instrument in the form of an order signed by both parties, complete in its terms, not ambiguous and requires no explanation to enable one to understand its terms;

"(c) That the order does not establish a conditional sale, nor does the order, together with the invoice, show that same was on condition.

"Defendant requested the court to find as a conclusion of law that the title to the baking powder was vested in the grocery company, or its trustee in bankruptcy, and judgment should be for the defendant. These requests were denied."

The court at the request of appellee, found as follows:

"(a) That the sheriff has in his possession merchandise described in the writ;

"(b) That the merchandise was shipped and delivered to the grocery company under and by virtue of a jobber's agency plan, written-order, duly signed by Fred Browne, president of the Browne-Brun Wholesale Grocery Company, an authorized agent of the defendant, which order provided that goods were not to be paid for until sold and were placed in storage, goods to be withdrawn by defendant as needed; an additional commis-

sion being allowed by saving expense of storage, and that title to said goods to be in plaintiff until sold; defendant being an agent for sale on account of plaintiff. The court announced its conclusion of law to be, ''that, upon the facts introduced by plaintiff, title to the baking powder remained in plaintiff, * * * and that the written order designated 'jobber's agency plan, not to be paid for until sold,' in connection with the undisputed testimony of plaintiff constitutes an agency agreement, and the goods in question were consigned by the plaintiff to the defendant, * * * and that the plaintiff is entitled to judgment for possession of the baking powder.''

It is first contended by the appellant that the evidence objected to and which the court afterwards considered was inadmissible, because he contends that the contract is plain and complete and contains no ambiguity.

The evidence was competent to explain certain provisions in the contract, and it was not prejudicial. The only purpose of it was to show the intention of the parties, and the trial court, believing that the contract was ambiguous, admitted the evidence for the purpose of showing the intention. Moreover, the evidence is practically undisputed.

The primary rule in the construction of contracts is that the court must, if possible, ascertain and give effect to the intention of the parties so far as this can be done consistent with legal principles. 13 C. J. 521; 6 R. C. L. 835.

And, in order to arrive at the intention of the parties, courts may acquaint themselves with the persons and circumstances that are the subjects of the statements in the written agreement, and are entitled to place themselves in the same situation as the parties who made the contract, so as to view the circumstances as they view them, and so as to judge the meaning of the words and the correct application of the language to the things described. *Inter-Southern Life Ins. Co.* v. *Shutt*, 175 Ark. 1161, 1 S. W. (2d) 801; *Coca-Cola Bottling Co. of Ark.* v. *Coca-Cola Bottling Co.*, 183 Ark. 288, 35 S. W. (2d) 579.

Evidence which tends to show the intention of the parties and does not contradict or vary the terms of the written instrument is admissible for the purpose of showing the real meaning of the words used in the instrument and the intention of the parties.

It is contended, however, by the appellant that the sale was not conditional, and that the title passed to the purchaser. The last paragraph in the contract clearly shows that the Browne-Brun Grocery Company was not to pay for any of the goods until they were sold, and the instrument does not purport to be a contract of sale. It further appears that this clause, indicating that there was to be no payment made until the goods were sold by the jobber, was written into the contract by Mr. Browne himself. We must look at the whole contract in order to determine its meaning, and ascertain what the parties themselves did under the contract, and how they construed the contract.

Unless the Browne-Brun Grocery Company sold the goods, it was not to pay for them. Moreover, the evidence on the part of the appellee shows that he talked with the representative of the Browne Company, and stated to him that the appellee was carrying insurance on the goods. This is not denied by Browne, but he simply says he does not remember.

It is not necessary that the term "conditional sale" be used in a contract, nor that there be a reservation of title to make it a conditional sale. Such reservation may be implied from the contract. 55 C. J. 1201. The facts that the appellee carried insurance on the goods, and that no payment was to be made to it until a sale by the jobber, together with the other competent evidence introduced, show clearly the intention of the parties.

The finding of facts by a judge sitting as a jury is as conclusive here as the verdict of a jury. We do not pass on the weight to be given to the evidence, nor the credibility of the witnesses.

There was substantial evidence to sustain the finding of the court, and the judgment is affirmed.