AMERICAN SNUFF COMPANY *v.* STUCKEY.

4-5324                         123 S. W. 2d 1063

Opinion delivered January 16, 1939.

*L. W. Bower,* for appellant.

*L. B. Smead,* for appellee.

HUMPHREYS, J. Separate suits were brought by appellant, the American Snuff Company, in the circuit court of Ouachita county, second division, to recover separate amounts for snuff which it shipped and invoiced to each appellee, to Bearden, Arkansas.

It was alleged that it shipped and invoiced to T. T. Stuckey on written order snuff of the net value of $406.76, and to Julius Anthony snuff of the net value of $597.13, and judgments were prayed against each for the value of the snuff shipped and invoiced to each.

The defense interposed in each case was that under the terms of the contract the snuff shipped and invoiced to each was on consignment to be paid for as sold on commission and was not an outright sale, and that, at the time the snuff was destroyed by fire, appellee, T. T. Stuckey, had sold snuff out of the shipment to him of the value of $132.59, and that Julius Anthony had sold out of the shipment to him snuff of the value of $119.89, and denied liability in excess of the amount sold by each.

The issue involved in each case being the same, the causes were consolidated for the purposes of trial and were submitted to a jury upon the testimony adduced and instructions of the court, resulting in a verdict against Julius Anthony for $119.89 and against T. T. Stuckey for $123.59 in favor of appellant, the value of the snuff sold by each, but the jury found in favor of Julius Anthony and T. T. Stuckey as to the balance claimed by appellant from each and has duly prosecuted an appeal to this court from the adverse finding of the jury and the consequent dismissal of its complaint for such balances.

The testimony introduced by appellant consisted of the orders and invoices which contained the clause that the snuff should be paid for as sold and oral evidence to the effect that the trade meaning of the words "to be paid for as sold" meant that this gave the merchant the privilege of paying for the snuff along as he sold it instead of making a specific date of payment and maybe working a hardship on the merchant by making it become

due on a date when he would not probably be able to pay it; and to the effect that it never sold any merchandise on consignment in which it retained title, but that the transactions were absolute sales and that the title to the snuff passed to appellees upon delivery thereof to them.

Appellees testified that the trade meaning of the words "to be paid for as sold" in the orders and invoices was that the snuff was left with each as agents of appellant to sell same on a commission and was not to be paid for until sold.

The orders were taken by Gordon Roberts, who represented appellant in the transactions, and the following answer is copied from the testimony of T. T. Stuckey: "A. Well, he came in there and wanted to sell me some snuff, and I told him I didn't want much; and he wanted to ship me a large order, and I told him I could not use that much. I had been buying it from time to time when he came around, prior to that time and I paid for it every thirty days; and he wanted to sell me a large shipment, and I didn't want it; and he asked me to put in four or five hundred dollars worth and leave it in there in my store, and for me to pay for it when he came around to check up; and for me to take it and sell it and he would have control of what I didn't sell; and he would come in from time to time and check up on what I had sold and give me credit; and he had the right to do anything he wanted to with the snuff. . . . Q. If you had any other conversation with reference to the control of it, please state what that was. A. He said he had a right to come out any time and take it somewhere else, any amount of it that he wanted to. Q. What were you to get, Mr. Stuckey, for handling it in that way? A. I was to get five and ten per cent. off of the list price on what I sold. Q. You were to get that as a commission? A. Yes, sir."

It was agreed that the goods were shipped and invoiced to appellee on March 19, 1936, and that the snuff was not mingled with the stock of goods each was carrying, but that it was placed in a separate part of their respective buildings or in separate rooms and when needed a case was taken out of the shipment and checked off

until their store buildings burned. On September 16, 1936, the business houses of both appellees were destroyed by fire and the snuff which had not been used was completely destroyed. Neither appellant nor appellees carried insurance on the snuff, and the snuff was not invoiced as a part of the stock, and when same was destroyed by fire no claim was made by appellees against the insurance companies for the snuff.

Gordon Roberts denied that he made statements to either Anthony or Stuckey to the effect that the goods should be sold by them as agents for appellant or that he had any authority to sell to them on consignment, but stated that his only authority was to make absolute sales of the snuff.

Appellant objected and excepted to the admission of oral testimony offered by appellees to support their theory that the goods were ordered, shipped and received by them to sell on commission on the ground that such testimony contradicted the terms of the written agreements. Appellant requested an instructed verdict in its favor on the ground that the evidence showed under the written contract that the sale of the snuff by appellant to appellees was an absolute sale and purchase and not a conditional sale in any respect. This instruction was refused and the court submitted the cause to the jury over the objection of appellant under the following and other similar instructions: "If you find from a preponderance of the evidence in these lawsuits that the snuff in question was sold by appellant to appellees, and that the property then passed to appellees when they accepted it from the railroad company, it constituted an outright sale and the nature of the transaction was not changed merely because the property was not to be paid for until resold. If you should not find that to be true, but, on the other hand, you believe from the evidence in the case that the appellees in these cases were merely acting as the agent for the appellant, American Snuff Company, and permitted the property to be placed in their places of business to be sold by them as agents of the American Snuff Company, and that the American Snuff Company did not part with the title to it, but retained the title, and retained

the right to control it at any and all times after the delivery then, it does not constitute a sale, but merely a consignment of the snuff in question. . . .''

We think the written contract was ambiguous and that the court correctly admitted the evidence tending to show the trade meaning of the words "to be paid for as sold" and that the instructions properly and correctly submitted to the jury the question of whether the sale was an absolute sale or a conditional sale.

In instructing the jury the court was governed largely by the declarations of law announced by this court in the case of *Sternberg* v. *Snow King Baking Powder Company, Inc.*, 186 Ark. 1161, 57 S. W. 2d 1057. The facts in the main are the same in the instant case that they were in the Sternberg Case and the declarations of law announced by the court in that case are succinctly stated in syllabi 1, 2, 3, 4, 5, 6 of the Sternberg Case. We insert them here as declarations of law applicable to the facts in the instant case.

"1. In construing contracts, the court must, if possible, ascertain and give effect to the intention of the parties as far as this can be done consistently with legal principles.

"2. To arrive at the intention of the parties to a contract, the courts may acquaint themselves with the persons and circumstances and place themselves in the same situation as the parties who made the contract.

"3. Evidence which tends to show the intention of the parties to a written contract, provided it does not contradict or vary its terms, is admissible to show the real meaning of the words used.

"4. In determining the meaning of a contract, the court must look at the whole contract and ascertain what the parties did thereunder and how they construed the contract.

"5. Reservation of title in sale of merchandise may be implied from the contract, the term 'conditional sale' not being necessary.

"6. Where baking powder was shipped by the manufacturer to a jobber, not to be paid for until sold by the jobber and insurance being carried by manufac-

turer, it will be implied that the title should remain in the manufacturer.''

In other words, we think the instant case is ruled by the Sternberg Case, *supra*.

No error appearing, the judgments are affirmed.