OLIN MATHIESON CHEMICAL CORPORATION, Plaintiff,

v.

SOUTHWEST CASUALTY COMPANY, Defendant.

Civ. A. 1322.

United States District Court
W. D. Arkansas,
Fort Smith Division.

March 7, 1957.

Mehaffy, Smith & Williams, Little Rock, Ark., for plaintiff.

Rex W. Perkins, Fayetteville, Ark., for defendant.

JOHN E. MILLER, District Judge.

This action is before the Court upon plaintiff's motion for summary judgment in its favor and upon defendant's motion for summary judgment in its favor. The parties have filed briefs in support of their respective contentions, and the motions are now ready for final disposition.

The pleadings, stipulations, and depositions on file disclose the following undisputed facts:

The plaintiff is a Virginia corporation; the defendant is an Arkansas corporation, having its principal place of business in the Fayetteville Division of the Western District of Arkansas; and the amount involved, exclusive of interest and costs, exceeds the sum of $3,000.

Prior to August, 1954, B. A. Meshell owned several trucks, including a 1953 Ford 2-ton truck, which he apparently had purchased under a conditional sales contract that had been assigned to Universal C.I.T. In any event, Meshell was

making monthly payments to Universal C.I.T. on the truck. Meshell had possession of the pink slip (registration slip) on the truck, but Universal C.I.T. retained possession of the certificate of title issued by the State of Arkansas.

On January 8, 1954, the defendant, Southwest Casualty Company, issued its standard liability insurance policy with a combination fleet schedule to Meshell, describing the above mentioned Ford truck as one of the vehicles covered thereby. The effective period of the policy was one year from date of issue. Among other things the policy provided:

"Item 6. (a) Except with respect to bailment lease, conditional sale, mortgage or other encumbrance the named insured is the sole owner of the automobile.

"\* \* \* \* \* \* \*

"The company agrees with the insured, named in the declarations made a part hereof, in consideration of the payment of the premium and in reliance upon the statements in the declarations and subject to the limits of liability, exclusions, conditions and other terms of this policy:

"Insuring Agreements

"I. Coverage A—Bodily Injury Liability: To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, caused by accident and arising out of the ownership, maintenance or use of the automobile.

"\* \* \* \* \* \* \*

"II. Defense, Settlement, Supplementary Payments: As respects the insurance afforded by the other terms of this policy under coverages A and B the company shall:

"(a) defend any suit against the insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if

such suit is groundless, false or fraudulent;

"\* \* \* \* \* \* \*

"III. Definition of Insured: With respect to the insurance for bodily injury liability and for property damage liability the unqualified word 'insured' includes the named insured and also includes any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission.

"\* \* \* \* \* \* \*

"VIII. Policy Period, Territory, Purposes of Use: This policy applies only to accidents which occur and to direct and accidental losses to the automobile which are sustained during the policy period, while the automobile is within the United States of America, its territories or possessions, Canada or Newfoundland, or is being transported between ports thereof, and is owned, maintained and used for the purposes stated as applicable thereto in the declarations."

The maximum liability of the defendant under the policy was $5,000 for bodily injury to each person and $10,000 for each accident.

During the early part of August, 1954, Meshell sold the Ford truck to Leo Harper. Harper paid either $400 or $450 to Meshell and assumed the payments to Universal C.I.T. The payments were approximately $114 a month, and seven or eight payments were still due at the time. The total purchase price of the truck was about $1,250.

Apparently the parties did not have a specific agreement that Meshell would retain title to the truck until the purchase price was paid. However, in his deposition Meshell testified as follows in answer to a question concerning what he would have done if Harper had failed to finish making the payments on the truck:

"A. I couldn't have done anything else but taken the truck just

as you or anybody else would have done.

"Q. You would have taken it back?

"A. Yes, sir." (Page 8).

In his deposition, Harper testified as follows:

"Q. Mr. Harper, at what point between the time you had your first agreement with Mr. Meshell and on up until the time you anticipated that you would make your last payment to C.I.T., at what point did you feel you would become the absolute owner of that truck?

"A. Well, that one is just like any of the rest of them, it's not mine until it's paid for." (Page 15).

Harper also testified as follows:

"A. Well, I had bought the truck from Mr. Meshell, conditionally bought it, I had paid him a down payment on it and was making his payments on the truck at the time. C.I.T. had papers on the truck. In other words, they financed the truck and, I don't know, I guess all three of us had an interest in it."

After the sale was made Harper then made the monthly payments directly to Universal C.I.T. Payments were made by Harper's own personal checks. At the time of the sale Meshell gave Harper the pink slip to the truck, but did not give him the certificate of title since the latter document was in the possession of Universal C.I.T.

After purchasing the truck Harper used it in his business of hauling pulpwood. Meshell exercised no control over the truck, and both parties considered the truck as belonging to Harper as long as he continued to make the payments. Apparently the only statement made after the sale by Meshell to Harper concerning the truck was in the nature of advice to Harper concerning the proper maintenance of the truck. No doubt Meshell wanted the truck properly cared for until Harper had completed the payments to Universal C.I.T.

The defendant insurance company was not notified of the sale by Meshell to Harper, and, in fact, the company had no knowledge of the sale until after the truck had been involved in an accident.

On October 14, 1954, the truck, while being driven by L. C. Lester, an employee of Harper, was involved in a collision which resulted in the death of Willie Earl Shirey. On October 26, 1954, Shirey's widow, Ethel Shirey, individually and as next friend of her minor children, filed a complaint in the Union County Circuit Court, alleging that her husband's death was proximately caused by the negligence of Leo J. Harper, Joe Canady, L. C. Lester, and International Paper Company. She sought damages in the total sum of $185,000.

On December 7, 1954, Mrs. Shirey amended her complaint by adding as parties defendant B. A. Meshell, Olin Mathieson Chemical Corporation, and Mrs. C. W. King. The defendant herein, Southwest Casualty Company, employed counsel to defend B. A. Meshell, and said counsel appeared in the Union County Circuit Court on June 27, 1955, to conduct said defense. On that date the plaintiff, Ethel Shirey, was granted a nonsuit without prejudice as to B. A. Meshell, Joe Canady, Leo J. Harper, and International Paper Company. After the nonsuit was granted as to Meshell the attorneys for the defendant, Southwest Casualty Company, withdrew from the case. The plaintiff herein, Olin Mathieson Chemical Corporation, demanded that Southwest Casualty Company defend the action against it, but the said Insurance Company refused to do so.

The case in the Circuit Court proceeded to trial, and the jury returned a verdict in favor of the plaintiff and against the defendants, L. C. Lester and Olin Mathieson Chemical Corporation, in the amount of $50,000. The case was appealed to the Arkansas Supreme Court and that court affirmed the judgment in full. The court held that there was sufficient evidence to make a jury question

as to whether Olin Mathieson Chemical Corporation "had the right to direct and control the operations of Lester and his truck". Olin Mathieson Chemical Corp. v. Shirey, Ark., 291 S.W.2d 250, 253.

The parties have stipulated that the plaintiff herein, Olin Mathieson Chemical Corporation, expended the sum of $7,-274.83 for attorneys' fee, costs and expenses in the defense of the action in the state court, and that said expenditures were reasonably necessary in the defense of the litigation.

Subsequent to the collision Meshell purchased the Ford truck from Universal C.I.T. for approximately $125.

Neither Meshell nor Harper received any money from the insurance company which had issued the collision coverage on the truck.

It is upon these undisputed facts that each party seeks summary judgment in its favor. Plaintiff contends that the transaction between Meshell and Harper was either an incomplete conditional sale or a bailment; that Meshell remained the owner of the truck within the meaning of the policy; that Harper's employee, Lester, was driving the truck with the consent of Meshell; that the plaintiff was legally responsible for the use of the truck; and therefore that plaintiff was an insured within the meaning of the policy.

To the contrary, defendant contends that the transaction between Meshell and Harper was an absolute sale; that at the time of the accident Meshell no longer owned the truck and the policy was no longer in effect; that Harper's employee, Lester, was not driving the truck with the consent of Meshell; and that plaintiff was not an insured under the policy.

At the outset the Court must determine the nature of the transaction between Meshell and Harper with reference to the truck in question. It clearly appears from the depositions of Meshell and Harper that a sale of the truck was intended and was made in August, 1954, and it is also clear that the parties contemplated that Meshell would retain title to the truck until the purchase price was paid.

Under the Arkansas law a conditional sales transaction is one 'in which a seller transfers the possession of goods to a buyer, on credit, with the understanding that title to the goods shall not pass from seller to buyer until the latter has paid the price'. Dinkelspiel v. Garrett, D.C.W.D.Ark., 96 F.Supp. 800, 803; Anderson and Hale, Conditional Sales in Arkansas, 4 Ark.Law Review 19. The buyer of goods under a conditional sales contract has complete control over the goods and is the owner thereof, the seller merely retaining a security title to secure payment of the purchase price. 4 Ark.Law Review, supra, pp. 25–26.

Title may be reserved by parol. Albers Milling Co. v. Farmers Produce Co., 8 Cir., 222 F.2d 915, 918; Pugh v. Camp, 213 Ark. 282, 210 S.W.2d 120; Sykes v. Carmack, 211 Ark. 828, 202 S.W. 2d 761. It is unnecessary that the term "conditional sale" be used, it being sufficient if reservation of title may be implied from the agreement of the parties. American Snuff Co. v. Stuckey, 197 Ark. 540, 123 S.W.2d 1063; Sternberg v. Snow King Baking Powder Co., Inc., 186 Ark. 1161, 57 S.W.2d 1057.

In the light of the above mentioned authorities, the Court is convinced that the transaction between Meshell and Harper was a conditional sale.

Having concluded that the transaction was a conditional sale, the Court must next determine whether the plaintiff was an insured within the meaning of the policy. The policy provides that "the unqualified word 'insured' includes the named insured and also includes any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission".

That the plaintiff was legally responsible for the use of the truck cannot be questioned. This matter was determined by the Arkansas Supreme Court in Olin Mathieson Chemical Corp. v.

Shirey, supra, and the correctness of that decision is not subject to collateral examination in this Court. Liberty Mutual Ins. Co. v. Steenburg Const. Co., 8 Cir., 225 F.2d 294.

Thus the primary question before the Court is whether Lester was using the truck with the permission of the named insured, Meshell, and interrelated with this issue is the subsidiary question of whether at the time of the accident Meshell was the owner of the truck with power to grant such permission.

While there have not been a great number of decisions on this matter, a majority of the courts considering the question have concluded that a conditional vendee does not use the insured vehicle with the permission of the vendor, and consequently is not covered by the omnibus clause of an automobile liability insurance policy. See, Annotation, 36 A.L.R.2d 673–679.

The majority rule is stated in Farm Bureau Mutual Ins. Co. of Indiana v. Emmons, 122 Ind.App. 440, 104 N.E.2d 413, 415, as follows:

"The specific question is whether, when Johnson sold the automobile to Emmons under a conditional sales contract, and Emmons took possession thereof under said contract, Johnson's possession and right to control the use of said auto ceased and passed to Emmons, and whether thereafter Emmons' possession and use of said auto was by virtue of his ownership rather than by virtue of any consent or 'permission' of Johnson.

"We cite with approval upon this issue the case of Virginia Auto Mut. Ins. Co. v. Brillhart, 1948, 187 Va. 336, 342, 343, 46 S.E.2d 377, 380, in which case the court stated as follows:

" 'The problem presented is one of coverage * * *. The question is whether the coverage afforded by the policy to Huffman (the conditional vendor) was extended or transferred to Owens (the vendee). If Owens was covered or protected by the policy, then Brillhart (a guest of Owens) was entitled to recover of the Insurance Company. On the other hand, if Owens was not so protected or covered, Brillhart's claim against the Insurance Company cannot be sustained.

" 'Brillhart insists that Owens was protected by the policy for two reasons:

" 'First, he says, under the "omnibus coverage" provision of the policy, protection was afforded to any one who was using or driving the car "with the permission of the named insured," Huffman; that when Huffman sold the car to Owens and the latter took immediate possession of it, this constituted a "permission" by Huffman to Owens to use the car, within the meaning of the above provision of the policy, and that hence its coverage was extended to Owens.

" '(1) Although the trial court took this view of the matter and sustained a recovery on that ground, it is not, in our opinion, sound.

" '(2) "Permission" or "consent" to use or drive a car within the meaning of such a provision must come from someone who is in a position to give or grant it. His relation to or control over the car must be such that he has a right to give or withhold the permission or consent to use it.

" 'As is said in 5 Am.Jur., Automobiles, § 535, p. 806, "For one's use and operation of a car to be 'with the express or implied consent' of the named insured, within the meaning and effect of the omnibus clause, the relation of the named assured to the car must be such that he or it is in a position to give consent." See also, 45 C.J.S., Insurance, § 829, pp. 900, 901, and cases there cited.

" 'In the case before us upon the sale of the car Owens, the vendee, took immediate possession of it. Huffman's possession of it, and his right to control its use, ceased and

passed to Owens. And this was so although Huffman retained a lien on the car for a part of the unpaid purchase price. After the consummation of the sale, Owens' use of the car was by virtue of his ownership of it and his right to control it, and not by virtue of the grant of any permission to him by Huffman. See Fagg v. Massachusetts Bonding & Ins. Co., 142 Or. 358, 19 P.2d 413; Whitney v. Employers' Indemnity Corp., 200 Iowa 25, 202 N.W. 236, 41 A.L.R. 495.' "

Accord, Home Indemnity Co. v. Bowers, 194 Tenn. 560, 253 S.W.2d 750, 36 A.L.R.2d 668 (pointing out that under the Tennessee law retention of title in a conditional sales contract is in the nature of a lien and mere security for the payment of the price); Virginia Auto Mutual Ins. Co. v. Brillhart, 187 Va. 336, 46 S.E.2d 377; Whitney v. Employers' Indemnity Corp., 200 Iowa 25, 202 N.W. 236, 41 A.L.R. 495 (emphasizing the fact that the loss in the event of destruction of the car would have fallen on the conditional vendee rather than on the vendor). Cf. Peterson v. Universal Automobile Ins. Co., 53 Idaho 11, 20 P.2d 1016; Merchants Mutual Casualty Co. v. Pinard, 87 N.H. 473, 183 A. 36.

■ Apparently there are no Arkansas cases on the question but this Court is of the opinion that the Arkansas law is in accord with the majority rule. Especially is this true in view of the fact that under the Arkansas law the conditional vendee has absolute control and dominion over the property and any loss falls upon him. Roach v. Whitfield, 94 Ark. 448, 451, 127 S.W. 722. And, as a matter of fact, the conditional vendee in the instant case, Harper, actually sustained the loss of the $400 or $450 he had paid Meshell and the monthly payments he had made to Universal C.I.T.

Plaintiff relies heavily on the case of Garlick v. McFarland, 159 Ohio St. 539, 113 N.E.2d 92. That case, however, is clearly distinguishable from the instant case. At page 95 of 113 N.E.2d, the court quoted the following Ohio statute:

"Section 6290-4. 'No person acquiring a motor vehicle from the owner thereof, whether such owner be a manufacturer, importer, dealer or otherwise, hereafter shall acquire any right, title, claim, or interest in or to said motor vehicle until he shall have had issued to him a certificate of title to said motor vehicle, or delivered to him a manufacturer's or importer's certificate for the same * * *. No court in any case at law or in equity shall recognize the right, title, claim, or interest of any person in or to any motor vehicle, hereafter sold or disposed of, or mortgaged or encumbered, unless evidenced by a certificate of title or manufacturer's or importer's certificate duly issued, in accordance with the provisions of this chapter.' "

In view of the quoted statute, together with other Ohio statutes, the court concluded that where an owner fails to comply with the Ohio Certificate of Title Act by not assigning and delivering his certificate of title to the purchaser, title does not pass and the seller remains the owner of the vehicle for all purposes including insurance coverage. Arkansas has no similar statute with regard to certificates of title, and the reasoning of the Garlick case does not apply to the case at bar.

It is true that the Arkansas certificates of title law provides that the owner of a registered vehicle, upon transferring his title or interest therein, shall endorse an assignment and warranty of title upon the certificate of title for such vehicle and shall deliver the certificate of title to the purchaser or transferee at the time of delivering the vehicle. Sec. 75–148, Ark.Stats.1947, Anno.1955 Supp. The law also provides that the transferee before operating or permitting the operation of such vehicle upon a highway shall apply for and obtain registration of the vehicle; and the transferee must obtain a new certificate

of title. Sec. 75–149, Ark.Stats., supra. There is no Arkansas statute, however, which requires compliance with the registration provisions before ownership of a vehicle may be transferred.

In this connection, Sec. 75–111, Ark. Stats., supra, defines the term "owner" as "a person who holds the legal title of a vehicle or in the event· a vehicle is the subject of an agreement for the conditional sale or lease thereof with the right of purchase upon performance of the conditions stated in the agreement and with an immediate right of possession vested in the conditional vendee or lessee or in the event a mortgagor of a vehicle is entitled to possession, then such conditional vendee or lessee or mortgagor shall be deemed the owner for the purpose of this Act".

The courts are not in agreement concerning the effect of the failure of a vendor or a vendee to comply with statutory provisions relating to certificates of title. As heretofore noted, under the Ohio law failure to comply prevents title from passing. Garlick v. McFarland, supra. Other jurisdictions so holding include Missouri, Mackie & Williams Food Stores v. Anchor Casualty Co., 8 Cir., 216 F.2d 317; and California, Harbor Ins. Co. v. Paulson, 135 Cal.App.2d 22, 286 P.2d 870. Jurisdictions holding that compliance with the registration law is not a prerequisite to passage of title include Minnesota, Johnson v. Fidelity & Casualty Co. of N. Y., 8 Cir., 238 F.2d 322; Wisconsin, Hofslund v. Metropolitan Casualty Ins. Co., 7 Cir., 188 F.2d 188; and Iowa, Federated Mutual Implement & Hardware Ins. Co. v. Rouse, D.C. Iowa, 133 F.Supp. 226.

■■ Here again it seems that the Arkansas Supreme Court has not had an occasion to determine this question.[1] However, this Court is of the opinion that the Arkansas law is in accord with the view of those jurisdictions holding that lack of compliance with registration statutes does not prevent passage of title. As stated in Hofslund v. Metropolitan Casualty Ins. Co., supra, the purpose of a registration statute, such as the one now in effect in Arkansas, is to protect bona fide purchasers of automobiles from fraudulent sales and to help identify the owners of automobiles being operated on the highway. In this regard, see West v. General Contract Purchase Corp., 221 Ark. 33, 36, 252 S.W.2d 405.

The statutes were not designed to change the law with regard to passage of title upon either an absolute sale or a conditional sale of a vehicle. One court holding to the contrary has admitted that the rule that the vendor remains the owner, when the registration statute is not complied with "may seem an artificial rule, and is contrary to that of most states * * *". Harbor Ins. Co. v. Paulson, supra, at page 874 of 286 P.2d.

In the Harbor Ins. Co. case the court beginning at page 872 of 286 P.2d said:

"While the rule seems to be different in other states, see Home Indemnity Co. v. Bowers, 194 Tenn. 560, 253 S.W.2d 750, 36 A.L.R.2d [668] 673; 5 Am.Jur. 806, California has laid down the rule that until the formalities required by the Vehicle Code are met, the vendor of an automobile under a conditional sales agreement for purposes of omnibus coverage in a policy of public lia-

[1]. The instant opinion was filed on March 7, 1957. Since that time an opinion of the Arkansas Supreme Court on this question, said opinion being dated March 4, 1957, has been published. House v. Hodges, Ark., 299 S.W.2d 201, 204. In the latter case, the court held that a certificate of title is not a prerequisite of actual title to a vehicle. Among other things the court said:

"The failure of appellee to obtain the certificate of title at the time he received the bill of sale does not deprive

him of title, for the certificate of title *is not title itself* but only *evidence of title.* * * * Let it simply be added that our statute does not purport to make void sales which are accomplished without compliance with each provision, where such sale is *bona fide*."

The House case involved an absolute sale, as distinguished from the conditional sale involved in the instant case, but the same principle would apply with regard to the effect of failure to secure a certificate of title.

bility insurance issued to the vendor is still the owner and the vendee is driving with his permission.

\* \* \* \* \*

"While the Votaw case [Votaw v. Farmers Automobile Inter-Insurance Exchange, 15 Cal.2d 24, 97 P.2d 958, 126 A.L.R. 538] dealt with a conditional sale and our case deals with an attempted absolute sale, the decision in the Votaw case is important in that it is contrary to the rule that an omnibus clause in an insurance policy does not cover a conditional sale vendee established in other states, including the following cases cited by defendant and amici curiae: Fagg v. Massachusetts Bonding & Ins. Co., 1933, 142 Or. 358, 19 P.2d 413 (full purchase price of automobile paid); Virginia Auto Mut. Ins. Co. v. Brillhart, 1948, 187 Va. 336, 46 S.E.2d 377 (full purchase price of automobile paid); Farm Bureau Mut. Ins. Co. v. Emmons, 1952, 122 Ind.App. 440, 104 N.E.2d 413 (conditional sale buyer in default); Whitney v. Employers' Indemnity Corp., 1925, 200 Iowa 25, 202 N.W. 236, 41 A.L.R. 495 (conditional sale); Home Indemnity Co. v. Bowers, 1952, 194 Tenn. 560, 253 S.W.2d 750, 36 A.L.R.2d 668 (conditional sale)."

It may be that the California decisions are distinguishable because of the particular provisions of the California statutes. In Traders & General Ins. Co. v. Pacific Employers Ins. Co., 130 Cal.App. 2d 158, 278 P.2d 493, 497, the court said:

"Vehicle Code, § 186(a) provides that 'No transfer of the title or any interest in or to a vehicle registered hereunder shall pass and any attempted transfer shall not be effective unless and until' certain requirements have been met, notably notification of the Department of Motor Vehicles \* \* \*."

For an Arkansas case discussing the California law, see, Ravn v. McCalley, 216 Ark. 921, 925, 228 S.W.2d 61.

Arkansas has no comparable statute and, as above stated, the California cases might be distinguished on that ground. It is also true that California has an owner's responsibility law which might have some bearing on the California decisions. See, Home Indemnity Co. v. Bowers, 194 Tenn. 560, 253 S.W.2d 750, 753. Nevertheless, even if the California cases are not distinguishable, this Court is of the opinion that the majority rule is the best rule and that the conditional vendee of a motor vehicle is the owner for insurance purposes even though said vendee has not received a certificate of title.

Plaintiff also relies on the concurring opinion by Judge Taft in Garlick v. McFarland, supra, wherein Judge Taft seems to conclude that a policy would remain in effect even though the insured ceased to own the vehicle in question. The opinion does not disclose whether the policy involved contained a provision similar to Insuring Agreement VIII in the policy involved herein. If the policy involved in the Garlick case contains no such provision, there might be some possible merit in Judge Taft's conclusion. But if the policy did contain such a provision, this Court is of the opinion that Judge Taft's conclusion would not be correct and that the proper rule is stated in Daugaard v. Hawkeye Security Ins. Co., 8 Cir., 239 F.2d 351. In the latter case the court held that ownership of an insured vehicle at the time of the accident was a prerequisite to coverage thereunder. A similar holding was made in Ohio Farmers Ins. Co. v. Lantz, D.C. Ind., 145 F.Supp. 770. Both of those cases involved absolute sales, but the reasoning used by the courts would apply equally to conditional sales. The policies in those cases contained provisions similar to Insuring Agreement VIII in the instant case, i. e., "this policy applies only to accidents which occur \* \* \* while the automobile is \* \* \* owned, maintained and used for the purposes stated as applicable thereto in the declarations". It will be noted that the policy applies only when the automobile is

"owned, maintained *and* used" for such purposes.

In the instant case, after the sale by Meshell to Harper the truck was no longer owned, maintained and used as provided in the declarations, and the Court is of the opinion that the policy was not in effect at the time of the accident.

To summarize, the Court is convinced that at the time of the accident Meshell was not the owner of the truck and Lester was not using the truck with the permission of Meshell within the meaning of the policy. It follows that plaintiff, Olin Mathieson Chemical Corporation, was not an insured under the policy and is not entitled to judgment against the defendant. There is no genuine issue as to any material fact, and the defendant is entitled to a summary judgment in its favor as a matter of law. Rule 56, Fed.Rules Civ.Proc. 28 U.S.C.A.

A judgment in accordance with the above should be entered.