## ROACH *v.* WHITFIELD.

### Opinion delivered April 11, 1910.

SALE OF CHATTEL WITH RESERVATION OF TITLE—LOSS BY FIRE.—Where a vendor of chattels retained title merely for the purpose of securing payment of the purchase money, and before it was paid the property was destroyed by fire without fault on the vendee's part, the vendor is entitled to recover the purchase price.

Appeal from Sevier Circuit Court; *James S. Steel,* Judge; reversed.

### STATEMENT BY THE COURT.

The appellant sued appellees on account for goods alleged to have been sold by appellant to appellees. Appellees answered, denying that they were indebted to appellant in the sum sued for. They set up that they were merchants, and entered into an agreement with appellant whereby she was to ship to appellees such goods as might be necessary and required by appellees on consignment to be paid for when sold, the appellees acting as the agents of appellant in making the sale. They allege that in the transactions out of which the suit grew they were acting as the agents of appellant in making the sale of goods furnished them for that purpose by appellant, and that the account on which appellant sues was for goods in their possession for her, and that the goods while being so held were destroyed by fire without any negligence on the part of appellees. The appellant replied to the answer, denying that appellees acted as her agents in making sale of the goods, and reiterated her allegation that the goods were sold outright to appellees.

The testimony on behalf of appellant tended to prove that she sold the goods to appellees absolutely, and not on consignment to be disposed of by them as her agents. The testimony in her behalf tended to prove that when she shipped goods under a consignment she had a written consignment agreement; that in such cases she retained title for the purpose of securing the purchase price only. The goods furnished appellees were not on consignment. Under the consignment contracts she retained title in the goods solely for the purpose of procuring the purchase price, but had no control over the goods nor did

she direct what price they should be sold for. The appellees were never her agents in any way.

The testimony on behalf of appellees as to the contract under which the goods were furnished them as given by one of the firm was as follows:

"These goods were shipped to us on consignment, and some shipped bill of lading attached. Those that were shipped on consignment were shipped that way for the purpose of securing the purchase price of the goods, and that was the understanding between us. We bought the goods for sale for the purpose of making a profit on them, and did not have to do anything except pay for the goods in order to own them. I understood that the goods would be ours at any time I sent a check to cover the invoice, and that she only retained title as security for the purchase price. I understood that I had absolute control of the goods. I had them in my house for sale, to sell at any price I wanted to, and the only title Roach had in the goods was to secure the purchase price. Roach did not undertake to check up the goods, but I did the checking up myself, reported all goods that had been sold, and gave them either a check or money to cover the amount. The memorandum of the lists of goods burned was made up from the invoices. I charged them up with the total amount of the feedstuff included in the two invoices. I bought this stuff to hold, for we were satisfied that such stuff was going up."

The court refused the following prayer of appellant for instruction:

"Fourth. The jury are instructed that, even though you may find from the evidence that the goods in question were shipped to the defendants on consignment and that the title thereto was retained in the plaintiff, and that such goods were, without fault of the defendants, destroyed by fire, yet, if you further find from the evidence that such goods were delivered to the defendants at a fixed price, to be by them retailed in due course of trade as merchants at any price fixed by them, and that the title was retained by the plaintiff solely as security for the purchase price, and that upon the payment of the purchase price title was to vest in the defendants, then the loss must fall on the defendants."

*Otis T. Wingo,* for appellant.

*Collins & Collins* and *J. S. Lake,* for appellees.

Where the contract is one of pure agency, the title remains in the vendor until the goods are sold to a *bona fide* purchaser. 22 L. R. A. (N .S.) 850; 150 Mass. 238; 82 Mo. 23; 111 Pa. 589; 105 Pa. 74. A bailee for mutual benefit is not liable for loss of goods if he has exercised ordinary care. 23 Ark. 61; 68 Ark. 284; 64 Ark. 284; 27 L. R. A. 733; 3 L. R. A. (N. S.) 348, note.

WOOD, J., (after stating the facts). The refusal of the court to grant appellant's prayer number 4 was reversible error. The prayer was warranted by the testimony both on the part of appellant and appellees. The appellant, a wholesale dealer, sold to appellees the goods at a fixed price named at the time. Appellees obtained, the moment the goods were delivered to them, absolute control over them. They resold them at their own price. The title was retained in appellant only for the purpose of security, but for no other purpose. So far as the appellant was concerned, she had done all she could do to pass the title when the goods were shipped to appellees. Nothing remained for her to do. The goods were on delivery under the complete dominion of the appellees to do with them as they chose, and to resell upon their own terms. The facts in this case do not make it a "bailment for mutual benefits." Cases of that character have no application here. Here, although the witnesses speak of the contract as a consignment, yet the facts detailed by them tend to show that, when the goods consigned to appellees were received by them, they became the principal debtors to appellant. The title passed immediately to them on the payment of the purchase price. They were not merely intermediaries to pass the title from appellant to some third parties as the ultimate purchasers. At least, appellant was entitled to an instruction on the specific facts as set forth in the above testimony, telling them if they found the facts to be as recited in prayer number four presented by appellant that the loss must fall on appellees. We think that, according to the weight of authority and the best considered cases, where the title is retained solely for security and passes immediately to the vendee upon the payment of the purchase money, he in the meantime

having the absolute control and dominion over the property, the rule is that the loss falls upon the vendee, and the vendor may recover the purchase price undiminished by such loss. *La-valley* v. *Ravenna,* 2 L. R. A. (N. S.) 97; *Osborn* v. *South Shore Lumber Company,* 91 Wis. 526, 65 N. W. 184; *Marion Mfg. Co.* v. *Buchanan,* 99 S. W. 984; *Phillips* v. *Hollenberg,* 82 Ark. 9, and authorities there cited.

The testimony tending to prove what appellant did in certain bankruptcy proceedings against certain third parties had no connection with this suit, and was therefore incompetent. It is unnecessary to decide whether under the whole case as developed it was also prejudicial.

For the error indicated the judgment is reversed, and the cause remanded for a new trial.