HUBBERT v. FAGAN.

Opinion delivered June 26, 1911.

1. MISTAKE—EFFECT OF UNILATERAL MISTAKE.—Relief will not be given in case of an executed contract on account of a mistake of one party alone, unless the mistake was induced by the conduct of the other party, or the other seeks unconscionably to take advantage of it. (Page 484.)

2. SAME—LACHES.—Where the heirs of the vendor of land, after having received the purchase money, stood by for nearly four years while the vendees and purchasers from them were making improvements of great value to the land, and yet raised no voice in protest, and made no motion to have the contract rescinded and the deed cancelled, they will be held to be barred by laches from contending that the money was accepted under a mistake as to their rights. (Page 486.)

Appeal from Pike Chancery Court; *James D. Shaver,* Chancellor; affirmed.

STATEMENT BY THE COURT.

W. M. Fagan, for himself and W. C. and C. C. Hays, bought a tract of land in Pike County from W. J. Hubbert. The agreement was made August 21, 1905, when Fagan paid Hubbert $60. The next day he gave Hubbert a check of the Hays for $940, and Hubbert delivered to him a deed for the land. The deed was executed to Fagan, and he conveyed it on August 23, 1905, to the Hays. Before the check was presented, the Hays, having heard that the Tye heirs were going to bring suit for the land, stopped the payment of the check. According to the contention of appellant, Hubbert then returned the check, and demanded a return of his deed, which the Hays refused. According to the contention of the appellee the check was returned to the Hays to be collected and the money paid to Hubbert when the title was

cleared. At any rate the balance of the purchase money was not paid on November 16, 1905, when Hubbert died in possession of the land, leaving surviving him as his sole heirs the appellants.

The Hays on November 20, 1905, procured releases from the Tye heirs of their claim to the land for the sum of $125, and on December 5, 1905, paid to each of appellants the sum of $156.67, aggregating $940, the balance of the purchase price of the land. The appellants at the same time executed to the Hays the following instruments:

"The said Hubbard heirs hereby agreed with the said W. C and C. C. Hays that, should a damage suit already be started against W. C. & C. C. Hays, we will withdraw same, paying all cost or expense that may have accrued in any such case, and we agree further that if no such suit has been started by reason of settlement made with the said W. C. & C. C. Hays this day we will not start such suit at any time in the future."

"Received of W. C. & C. C. Hays the sum of one hundred fifty-six and 67-100 dollars in full payment of amount due me as one of the heirs of W. J. Hubbert, deceased, from W. C. & C. C. Hays on a land transaction between W. J. Hubbert and W. M. Fagan."

The deeds to Fagan and from Fagan to the Hays were recorded December 7, 1905. The heirs who were living on the land when Hubbert died surrendered possession thereof to the Hays, after the execution of the above instruments. This suit was begun by appellees in the chancery court September 28, 1909, seeking to confirm title in them. The appellants resisted the confirmation, denying that appellees had title to the land and alleging in their answer and cross complaint, among other things, as follows:

"That Fagan for $60 obtained an option only to purchase the land, and that the sale thereof was not consummated, and that if any of the cross complainants signed any receipts and received any money from petitioners the cross complainants were laboring under a mistake of facts as to the existence of any title or interest to said lands being vested in them; that they were ignorant without negligence and mistaken as to their rights and liabilities; that said contracts and receipts were entered into under an illusion, and were obtained by imposition, duress and undue influence by

the petitioners; that said petitioners held a deed to the property on which they had failed to pay the purchase price and which had been rescinded by W. J. Hubbert; but the cross complainants were led to believe that it was binding on them, and that they had no title to the property, and said receipts were obtained by fraudulently imposing upon the ignorance of the cross complainants; that the cross complainants did not learn of their rights until about the time of the filing of this cross complaint."

They offered to return the money paid them, and the value of the improvements made by the petitioners. They pray that the deed of Hubbert to Fagan be cancelled, and that if petitioners have conveyed any part of the land to innocent purchasers the petitioners be required to account for the sums received by them.

The answer of the appellees to the cross complaint alleged that: "On the ——day of August, 1905, petitioner Fagan paid W. J. Hubbert $60 for an option to purchase the lands described in the cross complaint for $1,000; but they deny that there was any fraud in obtaining the deed from W. J. Hubbert, or in delivering to him the check for $940, or in receiving a deed from Hubbert and wife for the lands; that the check which was drawn by W. C. and C. C. Hays and the deed of Hubbert were executed and delivered in good faith, both parties intending to carry out the option. They set up that they had paid each of the Hubbert heirs $156.67, aggregating $940, in full settlement of their claims to the lands in controversy, and took from them an obligation not to sue for said lands, and a receipt for the moneys paid them, and thereupon they filed the deed of Hubbert for record. They deny that cross-complainants were ignorant of their rights or were imposed upon, or that any of the cross-complainants were infants at the time of their father's death, or were induced to move off said lands by any misrepresentations. They allege that cross complainants stood by and saw said lands greatly improved by the building of said railroad and the establishment of a station upon them, and permitted the petitioners to plat said lands into the town of Glenwood, and to sell many of said lots to innocent purchasers, and there was no effort made to claim said lands."

The decree dismisses the cross-complaint for want of equity and confirms the title in petitioners—appellees. Other facts stated in opinion.

*Callaway & Huie* and *Rose, Hemingway, Cantrell & Lough-borough,* for appellants.

1.   When Hays stopped payment of the check given for the purchase money, title revested in Hubbert and his heirs.   Thereafter he was holder of the legal title merely, the beneficial estate being in Hubbert, and after his death in the Hubbert heirs. . 33 Ark. 763.

The agreement signed by appellants subsequently has reference only to dismissing a damage suit, and has no tendency to divest title out of appellants or to invest it in Hays.   The receipt executed to him is wholly inadequate for any purpose.   It does not describe the land nor express the terms of the agreement.   It is not a sufficient memorandum to take it out of the statute of frauds.  16 Ark. 364; 21 Ark. 533; 45 Ark. 17; 56 Ark. 139.

2.   The agreement and receipt executed by the Hubbert heirs are inoperative because they were executed, and the money received, by said heirs, in ignorance that they had any title to the land.   And it is not correct to say that it was a mistake of law only.   It was a mistake of fact superinduced by a mistake of law.   Appellees will not be permitted to profit by appellants' ignorant belief that the deed executed by their father and still in the hands of Hays carried the title to the lands, and that they were entitled only to receive the purchase money.   75 Ark. 240, 241; 69 Ark. 406; 24 Ark. 365; 13 Ark. 129; 49 Ark. 33; Story, Eq. Jur., § 122; 2 Pomeroy, Eq. Jur., § 849; Kerr on Fraud & Mistake, 398 *et seq.;* 20 Am. & Eng. Enc. of L. 818; 2 Pom. Eq. Jur., § 847; 9 Howard, 55; 35 N. E. 858, 141 N. Y. 35; 2 Russell & Mylne 614; 98 U. S. 85; 141 U. S. 260; 51 Me. 78; 31 Conn. 517; 1 Beasley 165; 12 Beav. 229; 38 S. E. 449, 49 W. Va. 188.

*S. S. Langley, J. H. Crawford* and *T. D. Crawford,* for appellees.

1.   The transaction involved in this case was not an option but a bargain and sale.   An option is merely a contract by which the owner of property agrees with another person that he shall have the right to buy the property at a fixed price within a certain time.   10 Mont. 5.   There was no writing between the parties prior to the execution of the deed in consummation of the transaction, on the day the check for $940 balance of purchase money was delivered to Hubbert.

2. Title did not revest in Hubbert upon non-payment of the check. The facts in the case of *Bennett* v. *Hutson,* 33 Ark. 766, upon which appellants rely, are so dissimilar from the facts in this case that there is no analogy between the two cases, and the former is not an authority controlling in this case.

3. If there was a mistake on the part of appellants, it was one of law from which no relief can be afforded, a mistake merely as to the legal effect of what they did. 46 Ark. 176, citing 2 Pomeroy's Eq. Jur., § 843; Kerr on Fraud & Mistake, 428, 429.

3. If there was a mistake, it was not mutual. There is no proof tending to show that appellees did not understand the full significance of the transaction which they had with W. J. Hubbert and with his heirs after his death; and appellants cannot obtain relief because of a mistake on their part alone, without proof that it was induced by appellees or that the latter endeavored unconscionably to take advantage of it. 16 Cyc. 69; Benjamin on Sales, § 417; 74 Ark. 336; 75 Ark. 266; 46 Ark. 352.

4. When, after the execution of the contract by delivery of the deed and check, the appellees learned of a probable defect in the title, they were entitled to investigate further and determine the character of title they were buying, and the non-payment of the check was no ground of forfeiture. 120 Am. St. Rep. 796, 798, 48 Ore. 129; 57 Ill. 480; 88 Mo. 478; Bispham's Equity 181; 16 Cyc. 80; *Id.* 78; 38 Ark. 562; 77 Ark. 307; 59 Ark. 408; Waterman on Spec. Perf., § 467; Pomeroy, Spec. Perf., § 391; 9 Mich. 253; 25 Ill. 105; 45 Tex. 476; 5 Paige, Ch. 629; 20 Fla. 920; 75 Ark. 410. If there had been ground for forfeiture, it was waived by the vendor consenting to the delay in the payment of the purchase money in order that the defect in the title might be cleared up. 59 Ark. 405; 75 Ark. 414; 27 Am. St. Rep. 158, 92 Cal. 514.

5. Appellants are estopped by their own laches in failing to act promptly for a rescission, and in waiting until after a town had been located on the land, many improvements made thereon without claim of ownership or objection by appellants, valuable rights acquired, and the land greatly enhanced in value. 81 Ark. 352.

WOOD, J., (after stating the facts.) Appellants rely upon

the doctrine announced by this court in *Bennett* v. *Hutson,* 33 Ark. 763, as follows:

"An uncompleted sale, where a deed has been executed and the consideration has not been paid, and where there is no intention of a gift or a sale on time, makes a resulting trust in favor of the vendor; not for the purchase money, but for the whole land. Equity will treat it as no sale, and hold the vendee as trustee of the dry legal title; and a purchaser from such vendee, with notice of the facts, will acquire no title."

But if we concede that the $60 paid Hubbert by Fagan was for an option, and that the deed from Hubbert to Fagan did not evidence a completed sale under the doctrine of the above case, still, as we view the facts, the appellants are estopped from asserting any title to the land in controversy. Without setting out the evidence in detail or entering upon any lengthy discussion thereof, let it suffice to state that it warrants the conclusion that the appellants knew, when they received the balance of the purchase money and entered into the contract with the Hays, that their father had conveyed the land, and that the money they were receiving represented the balance of the purchase money. They knew, too, that their father had intended to convey the land upon the payment of the purchase money. The contract itself indicates that appellants thought that a damage suit might have been brought by their father before his death and the receipt, and the other evidence in the record show that they accepted the balance of the purchase money intending to settle any suit, if any should be pending, and any balance that may have been due their father on account of the "land transaction." True, they testify that they at the time were ignorant of their legal rights, and that they would not have received the money and executed the contract if they had known better. But, in our opinion, if appellants were really ignorant of their legal rights, the evidence does not discover any reasonable excuse for their ignorance. The circumstances were sufficient to put them upon inquiry, and they did consult with counsel. While appellants contend that fraud and imposition were practiced upon them by those representing appellees, the evidence, in our opinion, fails to establish such fraud or imposition. If there was a mistake, whether of law or fact, or both, that caused appellant to sign the contract and receipts, cer-

tainly it was a mistake of their own. There was no overreaching or fraud practiced upon them by appellees to superinduce the mistake, and appellees are not responsible for it. There is no pretense that there was any mutual mistake. Therefore if appellants were seeking here to have the contract and receipt they signed cancelled by affirmative action, they would have no standing in a court of equity. "Where relief is given because of the mistake of one party alone, it is where it is induced by the conduct of the other party, or because the other seeks unconscionably to take advantage of it, and the ground of jurisdiction is really fraud." 16 Cyc. 69. See *Rector* v. *Collins,* 46 Ark. 176, quoting 2 Pom. Eq. Jur., § 843. "When a written instrument is to be overcome for mutual mistake, it is required that the mutuality of the mistake be established by the clearest and most satisfactory evidence." *Willingham* v. *Jordan,* 75 Ark. 266 and cases cited. See also *Greenhaw* v. *Combs,* 74 Ark. 336.

Therefore, even if it could be held that the appellees hold the legal title in trust for those who are beneficially interested in the land, appellants by their contract and receipt, showing that they had received the purchase money, have placed it beyond their power to assert any interest therein against appellees.

Again, the evidence shows that the appellants, after having received the balance of the purchase money, stood by for nearly four years, while appellees, and purchasers from them, were making improvements of great value to the land, and yet raised no voice in protest and made no motion to have the contract rescinded and the deed under which appellees claim set aside and cancelled. Appellants should have acted promptly. They did not do so. Under the circumstances this was laches upon the part of appellants that fully warranted the court in dismissing their cross complaint for want of equity. See *Turner* v. *Burke,* 81 Ark. 352.

The judgment was correct. Affirmed.