THE AMERICAN LAUNDRY MACHINERY COMPANY
*v.* WHITLOW, ADMINISTRATRIX.

4-5458           127 S. W. 2d 817.

Opinion delivered May 1, 1939.

J. S. Jameson, for appellant.

Clifton Wade, Atkinson & Atkinson and Vol T. Lindsey, for appellee.

BAKER, J. According to appellant's statement, Vickers Cleaners & Dyers of Fayetteville is a partnership, composed of Roy H. Vickers and G. E. Ripley, which partnership became indebted to appellant, The American Laundry Machinery Company, for laundry machinery. Two series of notes were executed, evidencing the indebtedness and also title retaining contracts. On March 13, 1938, there was owing upon one series of these notes $3,452.56. Upon the other series of notes there was owing $1,150. There were two laundry plants. One of them known as the The Model Laundry was located at Rogers in Benton county. The other plant was at Fayetteville in Washington county.

There was no dispute about the balances due upon these separate contracts. It is probably true that both of these laundry plants had been in default in the payment of installment notes as they matured. The Model Plant at Rogers, on account of the indebtedness that it owed other parties than the appellant in this case, had been placed in a receivership, and Wayne Stone had been appointed receiver and had charge of that plant. By reason of these defaults and the receivership proceedings, the appellant company placed with its Chicago attorneys, Teller, Levit, Silvertrust & Levi, both series of notes and title retaining contracts for proper action. These Chicago attorneys employed Mr. J. S. Jameson, Fayetteville, and instructed him to file interventions claiming the property covered by the title retaining contracts. On March 13th, according to the statement before us, Mr. Jameson filed intervention in the Benton chancery court, setting up, as appellant's claim, notes aggregating $3,452.56 and title retaining contract, and filed a like suit in the chancery court at Fayetteville, alleging a balance due on notes of $1,150 secured by title contracts to the laundry machinery in the plant in that county. Ray House had been appointed receiver for the laundry at Fayetteville, but the business at Fayetteville was connected with the controversy under consideration here only in an incidental way. In this controversy appellant says that neither attorney Jameson nor receiver Stone knew that the $3,452.56 series of notes were secured by any machinery other than machinery located in the Model Laundry at Rogers. Shortly after this intervention was filed, receiver Stone advised Mr. Jameson, appellant's attorney, that there was a prospective purchaser who would pay appellant $2,000 in full of its claim against the Rogers plant, and Mr. Jameson submitted the proposition on March 17th, by writing to the Chicago attorneys, and the following statement was contained in his letter:

"The receiver, Wayne Stone, for the Model Laundry at Rogers, against which there is an unpaid balance of $3,452.56, advised me today that a prospective purchaser

of the Rogers Laundry would pay us $2,000 in full of our claim, and it is my opinion that unless this machinery has more value than I think it has, it would be to your client's advantage to accept.''

Mr. Jameson further states that on March 21st the Chicago attorneys advised him that they would like to know just what machinery was in the Rogers plant, since it seemed that the machinery in the two laundries had been switched. On March 23d, Mr. Jameson furnished an inventory showing the machinery in each laundry. This inventory, as we understand, was probably taken from the receiver's inventory, but this is by no means certain because Mr. Jameson states further, at another place in this record, that he visited both the plants and it was his own opinion, after visiting the Rogers plant, that the $2,000 in full of the claim against the Rogers plant was as much, if not more than could have been gotten out of the machinery located therein. Thus far the proceedings were without any suggestion of mistake or misunderstanding. The American Laundry Machinery Company had before it Mr. Jameson's letter suggesting that the receiver had the prospective purchaser who would pay $2,000 for the company's claim. We think it substantially without dispute that the parties had in mind at that time the Model Laundry at Rogers and were not including or considering the Fayetteville plant. After the American Laundry Machinery Company had received Mr. Jameson's letter, the inventories he sent them, the Chicago attorneys sent a telegram to Mr. Jameson, on March 25th, it follows:

''American versus Vickers offer of $2,000 Rogers Plant accepted (signed Teller, Levit, Silvertrust & Levi.''

Mr. Jameson promptly notified receiver Stone of the receipt of this telegram, who in turn advised Mrs. Eva L. Whitlow who was the prospective purchaser, and she called on Mr. Jameson and attempted to make an agreement, whereby she would pay the $2,000 in installments and this proposition was declined.

G. E. Ripley, who is spoken of in some of the evidence as Dean Ripley, was connected with the Fayetteville plant

and he was represented by attorney Clifton Wade of Fayetteville. When Mr. Wade learned that Mrs. Whitlow had not been able to close up the matter by paying the $2,000 in installments, he proposed to attorney Jameson to purchase these notes for G. E. Ripley at the same price and asked Jameson about his authority to assign the notes, and at the same meeting examined the foregoing letter of March 17th, and the telegram of March 25th, and promptly agreed that upon assignment of the notes he would procure the $2,000 to be paid attorney Jameson who, according to his own statement, says that he supposed the assignment of the notes was equivalent to the transfer or bill of sale of the machinery. He promptly assigned the notes representing the $3,452.56, and the conditional sales contract, which did in fact cover the machinery in The Model Laundry, but it is urged now, it covered, in addition, two pieces of machinery in the Fayetteville laundry, the same being one ''100-4 Roll Flat Work Ironer'' and one ''Huebsch hosiery table,'' which Mr. Jameson says he supposed secured the $1,150 series of notes involved in Washington county suit.

At the time of the transfer of these several notes and title retaining contracts by Mr. Jameson, there was prepared an assignment which amounted to a ratification, and which Mr. Jameson sent to the Chicago attorneys to have their client sign. On April 11th, three days after Mr. Jameson had made the assignment of these several instruments, the same being the date for the hearing of the suit in which Mr. Jameson had filed the intervention in the Benton chancery court, that court met and Mr. Jameson was present in court prior to the time that the case was called for trial in which the intervention for his client was pending, and, as he said, the matter, in so far as it affected the Rogers plant, had been disposed of by his assignment, he gave notice that he had no further interest in the proceeding, pending in the Benton chancery court involving the Rogers plant.

There is a bit of history connected with this payment of the $2,000 that perhaps ought to be stated, though it apparently may make very little difference in the

ultimate conclusion that may be reached. Mr. G. E. Ripley borrowed the $2,000 from his daughter and delivered this to Mr. Hilton, who appeared in the court offering this amount in settlement of the Laundry Company's claim, that is to say, this particular money was paid over to Mr. Jameson, as we understand from the record here, who retired from the case because he supposed the claim of his clients had been satisfied by this settlement and compromise. Hilton took no actual ownership, title or interest in the laundry business by this particular deal, and we think that must be conceded, but Mrs. Eva Whitlow appeared in the court, she being the one in whose interest Mr. Stone had written as being the prospective purchaser, offered a draft for $2,000 and this restored the fund that Mr. Hilton had delivered as money borrowed and paid over by Mr. Ripley.

This suit involved creditor's claims, and it involved also the said notes and the title retaining contracts transferred by Mr. Jameson, or the property represented by these documents. In addition thereto according to statements made which are not in dispute, the title of the real estate on which the laundry was located was brought into question. Mr. Whitlow, the deceased husband of Mrs. Eva Whitlow, had built this laundry building as his contribution to a partnership that had operated The Model Laundry. We are told, but the record does not disclose this as a fact, that Mr. Whitlow was denying any indebtedness to the appellant, although the amount of the indebtedness that was owing upon the machinery was not in dispute. Whatever may have been the conditions among the parties prior to this transfer of notes and title retaining contract, it may be said that many of the matters, some of which are stated and some of which are argued to some extent, we are left to our own imagination to supply by surmise and conjecture, the reason being that the appellant has not seen fit to supply them by statement or abstract of the pleadings of the parties to this suit, heard on April 11, 1938. We do not know what was involved even in the intervention of the appellant, except the statement made that appellant was seeking to

recover the property described in the title retaining contracts.

Whether there was service of summons upon those who had possession of the two pieces of property alleged to have been at Fayetteville at that time, we do not know and are not privileged to make a surmise or conjecture from anything that appears from the abstract furnished us by any of the parties interested. At this time, however, April 11th, the contract or ratification prepared by Mr. Wade, or Mr. Wade and Mr. Jameson, and sent by Mr. Jameson to Chicago had not had time to be heard from except possibly by telegraph. This is a matter also of conjecture and will not be relied upon as concluding any possible rights. We think it may be said of a certainty at this state of the proceedings, Mr. Jameson was dealing with Mr. Wade and with Mr. Lindsey, Mr. Atkinson and others interested with the utmost of good faith. There was no doubt in his mind at that time, and the evidence clearly evinces this fact, that to transfer this property, involved in litigation, in the Rogers plant, he had merely to indorse these evidences of title and deliver them over and this became a symbolic delivery of the property itself. Mr. Jameson had sent the letter above quoted in which he called attention to the fact that there was an unpaid balance of $3,452.56 against the Rogers plant; that the $2,000 was "in full of our claim." Mr. Jameson understood and we think he made it clear to his clients, or their Chicago counsel, that the parties who owed the indebtedness were insolvent; that the prospect of collection was fixed by the value or the amount that could be recovered from the machinery and not from any of the individuals who owed the indebtedness. We doubt if he could have stated his understanding in language more definite than he used. He had furnished to his clients the inventories of the two plants, because they had asked for it, stating that they thought some of the machinery had been switched.

The technical terms descriptive of this machinery might not have meant very much to Mr. Jameson, therefore, he might not have understood these descriptive

terms or any part of it. But according to his own statement his clients knew these facts and, having his letter before them, the Chicago attorneys and the laundry machinery company counsel sent the telegram that authorized the acceptance of the $2,000 for the Rogers plant. Mr. Wade, Mr. Lindsey, Mrs. Whitlow, and others interested in the plant, whoever may have been there, and who were interested in the litigation in the Benton chancery court, thoroughly understood what they were getting. They were not making any mistake. They were paying $2,000 for the ''claim in full,'' which Mr. Jameson was holding against the Rogers plant—$3,452.56, evidenced by notes. They seemed to have had some difficulty in raising the $2,000 to make this settlement. Mrs. Whitlow first failed. It is stated now that in the settlement at the time she paid over the $2,000 restoring the money that Mr. Ripley had delivered over to Mr. Hilton she assumed the indebtedness of The Model Laundry Company, including the expense of the receivership and that this was to get a complete settlement; that she could not and would not have done this except for the fact that she was able to buy this claim for the $2,000.

It is argued with considerable force and some degree of good reason that Mr. Wade had examined the letter written by Mr. Jameson, the telegram sent by his client, or its counsel, and that on account of some lingering doubt in his mind as to Mr. Jameson's authority he prepared the ratification contract. There was no merit in argument made that Mr. Jameson stated he had authority to assign the documents. Agency or the extent or scope of it may not be so established. He had possession of his client's notes. He had made the investigations that an attorney should have made of the value of the securities in his hands, and of the property represented thereby. He had given his clients the benefit of the offer made, stating that it was ''in full of our claim'' and ''our claim is $3,452.56.'' In addition to that, after this offer was made, he had furnished inventories of each of the two plants. All this having been done, he was then directed to accept the ''$2,000 Rogers plant.''

We think we must consider the Chicago attorneys and their client as reasonable business men, that under the offer made and under the acceptance authorized, they did not expect more than the $2,000. That much was paid to their attorney for their account. They argue now, and require Mr. Jameson to present two propositions, to reverse the decree of the chancery court, rendered on the 11th day of April, or to set aside that decree wherein these notes and title-retaining contracts were filed and canceled in the suit that they had authorized Mr. Jameson to file. These two propositions are: (1) that Mr. Jameson did not have authority to indorse and assign these notes and contracts without recourse. (2) That it was their intention, by the acceptance of the foregoing offer merely to transfer title to the property in The Model Laundry at Rogers which could have been done with a bill of sale, and that they intended to retain the notes and title retaining contracts to enforce their claim against two pieces of machinery in the Fayetteville plant; that Mr. Jameson, by his unauthorized act, transferred the property they did not intend to transfer; that he dealt with some property in the Fayetteville plant in addition to all the property in The Model Laundry at Rogers, and that by reason of this mistake there was no contract because the minds of the parties did not meet on the subject matter.

Appellant sought to reopen this decree by a motion filed about thirty days after the decree had been rendered. It is clear that Wade, Whitlow, and others were not notified immediately, but within a reasonable time, after the ratification contract had been sent by Mr. Jameson to the Chicago attorneys. Appellant, in its proceedings, offered to return the $2,000, has tendered it into court for the benefit of the parties interested and now ask that it be granted a judgment for the return of the two pieces of machinery in the Fayetteville plant, or that it have a judgment for the difference between the $2,000 and the aggregate amount of the notes—$3,452.56.

There is presented for our consideration here this motion, and the evidence taken thereon, but no part of the record upon which the decree was entered appears.

Since we are not advised as to all the matters that entered into the decree, we have extreme doubt of the propriety of considering its cancellation or modification merely because this motion states the lack of authority of Mr. Jameson and alleges the fact of a mistake as to the subject matter of the contracts. There may have appeared intervening rights superior even to those of the appellant who alleges there was no contract at all in law whereby it is presumed to have parted with its title and rights in this property involved. But assuming, without conceding there may be some merit in appellant's contention, we proceed to a discussion and settlement of that controversy. It is not contended in this case that any of the appellees are guilty of any kind of fraud, or misrepresentation. In fact, so far as the transaction is concerned, as between Mr. Jameson and those with whom he dealt in the transfer of these several notes and title retaining contract, the utmost of good faith seems to have characterized each step of the proceedings.

It is argued now that since the appellees have changed their relative positions, assumed debts and obligations, particularly Mrs. Whitlow, this decree could be modified, as prayed for by appellant, only at her great loss. Appellant says, however, this does not appear from this record, that she did not suffer any loss and that if she did, that that can make no difference for the reason that they did not part with any title by reason of Mr. Jameson's unauthorized action. This argument is unsound from two standpoints. If it is not made positively clear that Mrs. Whitlow would suffer loss, or that the parties have changed their attitude by reason of the settlement of this litigation, upon the transfer of these notes and title retaining contract wherein Mrs. Whitlow paid over $2,000, that failure is by reason of the fact that appellant has failed to abstract all the pleadings and proceedings upon which the decree was rendered and which they now seek to have modified.

We will not assume, in the face of this record that shows Mrs. Whitlow advanced $2,000, that she would be unaffected by a modification of the decree upon which the money was paid over in settlement of these several notes and contract.

The other argument made by appellant, that inasmuch as there was no contract because the minds of the parties did not meet, is clearly unsound. If we assume that there was a mistake and that Mr. Jameson acted without authority, that mistake was a unilateral mistake, not one in which any of the appellees misunderstood anything, not one in which Mr. Jameson made any mistake. Upon the face of this record he was fully authorized to do exactly what he did do. If he made a mistake that mistake appears solely upon the evidence of appellant and its own witnesses in which they say they did not authorize him to transfer the notes.

In 12 Amer. Jur. 624, § 133, it is held, as the rule sustained by practically universal authority, that a unilateral mistake alone will not justify a rescission. May it not be sufficient to say the law upon this subject is black type text book law.

They merely wanted a transfer of the property in The Model Laundry at Rogers. This was all Mrs. Whitlow got. It was what she paid for. It would be grossly inequitable to take any part of it away from her. We think there can be no doubt as to the correctness of the chancellor's finding in that respect. But it has been argued that she was already bound for this debt. Again we resort to the argument so many times stated by appellant's counsel, that the record does not disclose she had signed any of the notes, or title retaining contracts, nor is there any evidence that she had assumed any debt due to appellant. We think it incumbent upon us at this point to place the blame where it belongs, if appellant lost anything by reason of this transfer of the notes and contract. It could have been a little more explicit in the telegram, were it not meant for a complete acceptance of the propositions stated in Mr. Jameson's letter, which we have hereinbefore copied. If there was a loss, it

should be suffered by the one causing that loss and not by those entirely free from wrongdoing or culpable negligence. Appellant's conduct contributed to produce such loss. *Cureton v. Farmers' State Bank,* 147 Ark. 312, 227 S. W. 423; *Missouri Pacific Rd. Co. v. Cohn Co.,* 164 Ark. 335, 261 S. W. 895; *O'Berg v. Bank of Sulphur Springs,* 183 Ark. 622, 37 S. W. 2d 700. Many other citations might be set out, but this seems unnecessary.

This position is further justified when we consider, at the time of this trial of this motion, when all the parties are acquainted with every condition involved in this controversy, the trial judge asked counsel for appellant what he was claiming out of the Fayetteville plant, and he stated "$1,150." If he did not know then that these two pieces of machinery represented in the notes aggregating $3,452.56 were in that plant it was because his clients had failed to advise him of that fact. It may be said in addition that both the appellant and appellees have stated in their briefs that the balance owing, $1,150, to the appellant by the Fayetteville plant has been paid in full.

We think the chancellor was justified in finding, as he no doubt did, that the offer of $2,000 in full of the claim, about which Mr. Stone had given Mr. Jameson notice, was an offer by Mrs. Whitlow. Before she was able to accept or pay over the money, Mr. Ripley advanced this sum. By that time she had raised the money and paid it over. We think a preponderance of the evidence shows that Mr. Jameson was not mistaken in the authority he had; that he acted upon it honestly and just as a counsellor or attorney zealous for the protection of his client should have done. If there were no mistake, of course, appellant has no standing in a court of chancery. If there were a mistake, appellant itself, not its counsel, who appeared for it and filed the intervention in its behalf, was responsible therefor. The appellant, and not a blameless party, must bear the burden of its omissions, and mistakes.

Decree affirmed.