**STANDARD ACCIDENT INSURANCE COMPANY, Plaintiff,**

v.

**R. D. WILMANS, Jr., et al., Defendants.**
No. LR-62-C-58.

United States District Court
E. D. Arkansas, W. D.

Feb. 4, 1963.

J. W. Barron, Little Rock, Ark., for plaintiff.

Charles J. Lincoln, Little Rock, Ark., Kaneaster Hodges, Newport, Ark., Robert S. Lindsey, Little Rock, Ark., for defendants.

HENLEY, Chief Judge.

This diversity case is an action for a declaratory judgment of non-liability on an automobile insurance policy issued by plaintiff, Standard Accident Insurance Company, to the defendant R. D. Wilmans, Jr., and covering a 1959 model Chevrolet truck. The policy period was from November 19, 1960, to November 19, 1961, and the policy was issued in renewal of the policy which Wilmans procured when he purchased the truck initially.

On October 26, 1961, during the policy period, the truck while being driven by one Victor Ramirez came into collision with a tractor-trailer being operated by one Richard Lee Dennis. Both drivers were killed as a result of the accident and both vehicles were damaged. The tractor portion of the vehicle being operated by Dennis belonged to him, and the trailer belonged to defendant Southwest Motor Freight Lines.

Following the happening of the accident just described, the defendant Mrs. Marcella Ramirez, widow of Victor Ramirez and administratrix of his estate, filed suit against a special administrator of the estate of Richard Lee Dennis and against Southwest Freight Lines. It is alleged in the complaint in that case that the accident and the consequent death of Ramirez were due to the alleged negligence of Dennis in the operation of his vehicle, and that both the estate of Dennis and Southwest Freight Lines, his alleged employer, are liable for the damages claimed to have been sustained on account of the death of Ramirez. The case was removed by the defendants to the United States District Court for the Northern Division of the Eastern District of Arkansas.

The defendants, Mrs. Louise M. Dennis, ancillary administratrix of the estate of Richard Eugene Dennis, and Southwest Freight Lines, answered the complaint of Mrs. Ramirez denying liability on account of the death of Mr. Ramirez. In addition, Mrs. Dennis and Southwest Freight Lines filed counterclaims against the Ramirez estate, and against R. D. Wilmans & Sons, Inc., R. D. Wilmans, Jr., and Hildegarde Wilmans, his wife, the latter two individuals being described as partners doing business as McQuistion Farms. It is the theory of the counterclaimants that the Ramirez-Dennis accident was proximately caused by the alleged negligence of Ramirez, that at the time of the accident Ramirez was an employee of R. D. Wilmans &

Sons, Inc., and of R. D. Wilmans, Jr., and Hildegarde Wilmans, and was acting in the scope of his employment, and that all of the counter-defendants are liable to the counterclaimants for the death of Dennis, the damages to his tractor, and the damages to the trailer belonging to Southwest Freight Lines. The counter-defendants have denied any liability to the counterclaimants.

The litigation just described is pending, and that case should not be tried until the instant case is disposed of.

The instant controversy involves a dispute between plaintiff insurance company, on the one hand, and the Ramirez estate, Mr. and Mrs. R. D. Wilmans, Jr., Mrs. Dennis, and Southwest Freight Lines, on the other hand, as to whether the insurance policy issued to Mr. Wilmans in 1960 and which was purportedly in force when the accident occurred affords coverage with respect to that accident to either the Ramirez estate or to Mr. Wilmans.[1] It is the position of plaintiff that by reason of a September 1960 transaction between Wilmans and Ramirez relative to the truck, and by reason of certain uses to which Ramirez put the truck, the renewal policy in suit did not provide coverage for either Ramirez or for Mr. Wilmans. The defendants here deny the validity of plaintiff's contentions.

The case has been tried to the Court and to a jury and was submitted to the jury on special interrogatories and instructions in connection therewith, with all remaining issues of law and of fact, if any, being reserved for determination by the Court. Rule 49, Federal Rules of Civil Procedure, 28 U.S.C.A. As will be seen, the jury returned answers to the interrogatories which were favorable to plaintiff, and plaintiff has moved for judgment in accordance with the jury's answers. The defendants resist this motion and contend that notwithstanding the jury's answers to the interrogatories, the policy, as a matter of law, was in

---

1. While R. D. Wilmans & Sons, Inc., is a party to the death case, that corporation is not a party to this action.

force at the time of the accident, and that plaintiff is liable thereunder.[2]

The defendant, R. D. Wilmans, Jr., is a substantial farmer residing in Jackson County, Arkansas. One of his operations, known as McQuistion Farms, is conducted as a partnership made up of Mr. and Mrs. Wilmans. Mr. Wilmans also has an interest in R. D. Wilmans & Sons, Inc.[3] Victor Ramirez, who was killed in the accident, was employed for many years by R. D. Wilmans, Jr., as an agricultural laborer and truck driver, and Mr. Ramirez and his family resided on McQuistion Farms. In addition to driving a truck for Mr. Wilmans, Ramirez did certain agricultural hauling on his own account, transporting agricultural laborers and commodities. When Ramirez was hauling either for Mr. Wilmans or for others, he was compensated on the basis of the number of laborers or the quantities of agricultural products hauled by him. His employment was seasonal, and his income varied accordingly.

The evidence indicates that the relationship between Ramirez and the Wilmans family was to some extent a paternal one. Ramirez, a Mexican by birth, maintained no bank account of his own and deposited all of his earnings with R. D. Wilmans & Sons, Inc., being credited with the amounts of his deposits. He drew funds from the corporation as needed, and his account was charged with his withdrawals and with advances made to him by the company.

For many years the insurance business of Mr. Wilmans has been handled by the McDonald-Hinkle Insurance Agency in Newport, Arkansas, in which agency Mr. Paul McDonald is a partner. By custom the agency maintains insurance on the various vehicles owned by Mr. Wilmans and bills Mr. Wilmans periodically for premiums. The Wilmans policies are kept in the physical possession of the agency in a separate file and are not mailed to Wilmans or, as a general rule, examined by him. When Wilmans acquires a new vehicle, he notifies the agency which, in turn, effects insurance thereon and sees that the policies are renewed as they expire.

When Wilmans bought the truck involved in this case, he notified Mr. McDonald of that fact, and McDonald, as local agent for plaintiff, issued a policy which provided indemnity against liability for personal injuries, including death, and property damage. The policy also provided $50 deductible collision insurance. The anniversary date of the policy was November 19, and when the policy which expired on November 19, 1960, was nearing its anniversary date, a renewal policy was issued for the period from November 19, 1960, to November 19, 1961. As stated, that policy is the one in suit.

In September 1960, prior to the issuance of the policy in suit, Wilmans and Ramirez entered into an oral contract under the terms of which Ramirez was to obtain title to the truck upon the payment to Wilmans of $2,500. Ramirez was not able to make this payment at the time of the contract, and since his employment was seasonal the parties made no effort to set up any schedule of weekly or monthly payments. It was agreed that Ramirez would make payments when and as he was financially able to do so, and it was contemplated that the $2,500 would be paid out over

2. For some reason neither the Ramirez estate nor the Dennis estate nor Southwest Freight Lines joined in the response to plaintiff's motion which response was filed by Mr. and Mrs. Wilmans, nor did the estates or Southwest Freight Lines join in the cross-motion of Mr. and Mrs. Wilmans for judgment against plaintiff. However, the attorney for the Ramirez estate signed the brief filed on behalf of Mr. and Mrs. Wilmans. Since, as far as this case is concerned, the interests of all of the defendants are substantially identical, the Court will consider that the two estates and Southwest Freight Lines have joined in the response and cross-motion filed by Mr. and Mrs. Wilmans.

3. The R. D. Wilmans referred to in the corporate name is now dead. He was the father of R. D. Wilmans, Jr.

a period of approximately 30 months. At the time of his death Ramirez had in fact paid about $700 on the truck.

When Mr. McDonald issued the original policy on the truck at the time when it was first acquired by Mr. Wilmans, the declarations appearing on the face of the policy were correctly filled out so as to show that Mr. Wilmans, the named insured, was the sole owner of the truck, that his business was that of a farmer, and that the vehicle would be used for business and pleasure.

When Mr. Wilmans entered into his 1960 contract with Ramirez, he did not advise Mr. McDonald of that transaction, and when McDonald issued the renewal policy for 1960–61, he simply repeated the declarations of the original policy which, insofar as he knew, were true and correct. It was not until after the accident that McDonald discovered the 1960 Wilmans-Ramirez transaction, nor did he learn until that time that Ramirez was hauling farm laborers and commodities for compensation, his services being extended not only to Mr. Wilmans but also to others.

It should be said that the use to which Ramirez put the truck after the 1960 transaction with Wilmans did not differ substantially from the use which had been made of it by Ramirez prior to the contract. However, before the contract Ramirez was not free to use the truck except with the permission or at the direction of Mr. Wilmans, whereas after the contract Ramirez was free to use the truck as he chose.

It is the theory of the plaintiff that the 1960 contract between Wilmans and Ramirez relating to the truck was a "sale" of the vehicle by Wilmans to Ramirez; that Ramirez, whose interest in the truck was not disclosed by the policy in suit, was driving the truck at the time of the accident as "owner" thereof and not "with the permission" of Wilmans, the named insured, as provided in the insuring agreements and in the policy definition of the term "insured," and that plaintiff owes the Ramirez estate no obligation under the policy. As to Wilmans, plaintiff contends that when Wilmans sold the truck to Ramirez, the policy then in force ceased to provide coverage to anyone, and that the policy in suit never became effective as a contract of insurance between the company and Wilmans.

The defendants deny that the Wilmans-Ramirez contract amounted to a "sale," either absolute or conditional, and contend that at most it was a contract whereby Wilmans agreed to sell the truck to Ramirez at some time in the future when the $2,500 purchase price should have been paid in full. Based upon this characterization of the transaction, defendants insist that Wilmans remained the owner of the truck, and that at the time of the accident Ramirez was operating the vehicle "with the permission" of Wilmans.

Alternatively, defendants contend that the transaction with Ramirez relative to the truck, and the activities of Ramirez in hauling laborers and commodities were not material from an insurance standpoint.

It is still further contended that regardless of what, if anything, Mr. McDonald knew about the ownership of the truck and the uses to which it was being put, he had no right to assume that there had been no significant changes in ownership or use and to issue renewal policies on the basis of such assumption; that he was required to make inquiry of Wilmans prior to the issuance of each renewal policy; that if he had made inquiry prior to the issuance of the policy here involved he would have learned the true facts and should be charged with knowledge of what such an inquiry would have revealed, which knowledge, it is claimed, is to be imputed to plaintiff. From this premise, defendants argue that having issued the renewal policy with notice of the true situation, plaintiff should not be heard to say that the policy did not become effective.

It is finally contended that by certain conduct of the company and its agents

after the accident plaintiff has waived any policy defects or defenses and is estopped to deny the existence of coverage at the time of the accident.

The policy in suit is standard in form and provides indemnity to the "insured." The unqualified word "insured" appearing in the policy is defined so as to include not only the "named insured," Wilmans, but also any person operating the vehicle "with the permission" of the named insured.

Item 6(b) of the declarations amounts to a representation that "except with respect to bailment lease, conditional sale, purchase agreement, mortgage or other encumbrance, the named insured is the sole owner" of the described vehicle. Item VIII of the insuring agreements provides, among other things, that the policy applies only to accidents which occur during the policy period and while the vehicle is "owned, maintained and used for the purposes stated as applicable thereto in the declarations."

### I.

■ While defendants have advanced a number of contentions, their principal contention at the trial was that the 1960 transaction between Wilmans and Ramirez, which has been described, was not a "sale" of the truck. That issue was submitted to the jury by means of Interrogatory No. 1, and the jury by its answer to that interrogatory found that the transaction was a sale.[4]

Certain of defendants' alternative contentions raised factual issues as to whether if the company had known of the general hauling activities of Ramirez, it, acting in good faith and as an insurance company of ordinary prudence and in accordance with standard underwriting practices, would have issued the policy on the same terms and at the same rate as were employed, and whether or not Mr. McDonald at the time of the

issuance of the policy in suit knew of those general hauling activities.

Interrogatory No. 2 inquired, in effect, whether the policy would have been issued as it was had the company known the true facts relative to the activities of Ramirez, and the jury found that it would not have been so written. Interrogatory No. 3 inquired whether Mr. McDonald knew of those activities when he issued the policy, and the jury found that he did not.

In the Court's opinion the interrogatories propounded to the jury were proper, the jury was properly charged with respect to the issues submitted to it, and the jury's answers to the interrogatories have adequate evidentiary support.

Accordingly, the answers will be accepted.

### II.

Preliminary to a discussion of the ultimate rights of the parties, when questions relevant thereto are viewed in the light of the jury's factual findings, the Court deems it well to consider defendants' argument that regardless of the actual knowledge of Mr. McDonald as to the ownership and use of the truck, he, and through him the plaintiff company, was charged with such knowledge so that the company will not be heard to deny coverage.

■ The Court cannot accept this argument because it is bottomed upon the unsound proposition that Mr. McDonald was required to make inquiry of Mr. Wilmans prior to issuing a renewal policy to determine whether any significant changes had taken place in the truck's use or ownership, and that McDonald is charged with the knowledge which such inquiry would have produced.

An automobile liability policy is ordinarily issued for an initial period of one year and is renewed annually thereafter as long as ownership remains unchanged and the owner of the vehicle desires to

---

4. The jury was not asked whether the sale was a conditional sale as distinguished from an absolute sale, but when the answer given is considered in the light of the evidence, it is clear that the jury was of the view that the sale was conditional with Mr. Wilmans retaining legal title to secure the purchase price.

retain the coverage. It is a well known fact that these renewals are in practice automatic, and the Court thinks that the agent has the right to assume that conditions of ownership and use have not changed, and to rely upon the insured to give notice of changes. In other words the agent is not bound to make affirmative inquiry before issuing a renewal policy.

When the original policy on the truck was issued, the declarations appearing thereon were true. Mr. Wilmans was the sole owner of the truck at that time. He was a farmer, and the truck was to be used for business or pleasure, either by Mr. Wilmans or by some other person or persons with his permission.

The method whereby Wilmans obtained insurance on his vehicles has been described, and in view of the course of dealing between Wilmans and McDonald, the declarations in the policies, while written out by McDonald, were in fact the declarations of Wilmans, who cannot be heard to say that he was ignorant of them, particularly in view of the fact that he voluntarily permitted the policies to remain in the hands of McDonald and did not trouble to read them.

McDonald is not clairvoyant. It is not contended that he had any knowledge of the 1960 transaction which the jury found to be a sale of the truck, and the jury has found that in fact he did not know of the general hauling activities of Ramirez. Mr. Wilmans, on the other hand, had full knowledge of all of the facts, and there was a duty of disclosure on his part. Hence, it cannot be said that either McDonald or plaintiff is to be charged with knowledge of the true facts of ownership and use. Mr. Wilmans and those in privity with him must take the insurance consequences of his failure to make disclosure.

### III.

As to the question of whether plaintiff owes any duty under the policy to the Ramirez estate, it is plain that aside from the claim of estoppel based upon imputed knowledge, which claim has been disposed of above, and aside from claims of post-accident waiver and estoppel, presently to be discussed, the rights of the Ramirez estate against plaintiff depended upon whether Victor Ramirez was an "insured" at the time of the accident.

The policy defines the term "insured" as meaning the named insured or any other person operating the truck with the permission of the named insured. By the weight of authority a conditional vendee of a motor vehicle the insurance on which is carried in the name of the conditional vendor operates the vehicle in his own right and not with the permission of the conditional vendor, and is not entitled to protection under the latter's policy. Home Indemnity Co. v. Bowers, Tenn., 253 S.W.2d 750, 36 A.L.R.2d 668; Whitney v. Employers Indemnity Corp., 200 Iowa 25, 202 N.W. 236, 41 A.L.R. 495; Olin Mathieson Chemical Corporation v. Southwest Casualty Co., W.D. Ark., 149 F.Supp. 600; Annotation, 36 A.L.R.2d 673.

In Olin Mathieson, supra, Judge Miller pointed out that while there appeared to be no Arkansas case dealing with this specific question, he was of the opinion that the Supreme Court of Arkansas would align itself with the majority view were the question presented to it, particularly in view of the fact that under Arkansas law the conditional vendee has absolute control and dominion over the subject matter of the sale and must bear any loss that may occur with respect to the property. Cited in that connection was Roach v. Whitfield, 94 Ark. 448, 127 S.W. 722. This Court sees no occasion to question Judge Miller's appraisal or forecast of the law of Arkansas.

Since the jury has found that the transaction between Wilmans and Ramirez was a conditional sale of the truck, it follows that Ramirez was not operating the vehicle at the time of the accident "with the permission" of Mr. Wilmans, and for that reason Ramirez had, and his estate has, no rights under the policy, and plaintiff owes the estate no duty under the policy.

## IV.

A considerable portion of plaintiff's argument that the policy afforded no protection to Mr. Wilmans is 'based upon Item VIII of the insuring agreements, heretofore abstracted, the contention being that the vehicle at the time of the accident was not owned and used as disclosed in the declarations. It is pointed out that Mr. Wilmans was not the sole owner of the truck, that Ramirez was not a farmer, and that the vehicle was being used by Ramirez in the general hauling of agricultural laborers and commodities.

One weakness of this particular argument is that Item VIII of the insuring agreements must be read in connection with Item 6(b) of the declarations which, as indicated, provides that the declaration of ownership appearing as Item 1 of the declarations is a declaration of "sole ownership" except "with respect to bailment lease, conditional sale, purchase agreement, mortgage or other encumbrance." While it is quite true that those who prepared the policy may have had in mind the conventional situation in which a conditional vendee or mortgagor is the named insured, the language used is subject to the opposite construction so as to apply to the situation presented here in which the named insured is the conditional vendor. And it is familiar law that ambiguous language in a policy of insurance is to be construed most strongly against the insurer. Hence, it is arguable that the declaration of ownership in the policy was not a declaration of "sole ownership."

A further weakness in the argument based on Item VIII is that the policy as written does not prohibit the use to which Ramirez put the truck with the permission of Wilmans prior to the 1960 sale and in his own right after that sale, although such use might have called for a higher premium or the company might have refused to incur the risk incident

to such use had it known of it.[5] From this it may be argued that Ramirez's use of the truck would not have avoided the policy assuming that it was in force originally.

■ However, apart from Item VIII and apart from all questions of waiver and estoppel, the Court finds itself in agreement with plaintiff that the policy does not afford protection to Wilmans. The Court is persuaded in this connection that when the renewal policy in suit was issued by Mr. McDonald he was under such a misapprehension of facts going to the very substance of the agreement that the policy never became a contract of insurance.

Regardless of what action the company might have taken had it known the true facts, it did not know those facts. It thought that it was issuing a policy to Mr. Wilmans affording protection with respect to a motor vehicle owned by him and which would be used at least primarily in Mr. Wilmans' own business.

Under Coverage A of the policy plaintiff assumed obligations up to $100,000 on account of the personal injuries to or death of any one person resulting from wrongful or negligent operation of the truck by the insured, and up to $300,000 on account of personal injuries or deaths resulting from any single accident. The limit of property damage liability was $5,000. It is obvious that it is one thing for an insurance company to issue a policy with such limits to a man of the standing and resources of Mr. Wilmans. It is quite another thing for such company to issue such a policy to an impecunious individual such as Ramirez. With Mr. Wilmans owning the truck, the company had a right to expect that he would be responsible for its use and maintenance and would not entrust it to improper persons or permit it to fall into a state of disrepair. In the case of Ramirez the company might well have

5. There was evidence that plaintiff does not issue liability insurance with respect to vehicles, other than school busses, which are used for the hauling of passengers for compensation. And it has been noted that the jury found that had the true facts been known, the policy would not have been issued on the same terms and at the same rate as were employed.

supposed that such an expectation would not be justified.

The misapprehension on McDonald's part was not due to any fault or negligence on his part, but rather to the failure of Wilmans to disclose to McDonald his transaction with Ramirez relative to the truck and the use to which Ramirez was putting the truck since that transaction. It is not suggested here that Mr. Wilmans was guilty of any positive fraud or misrepresentation, but in the Court's estimation he had a duty of disclosure which he failed to perform.

In the circumstances it would be unjust to hold that the renewal policy issued in November 1960 was a binding contract of insurance, and the Court is unwilling so to hold.

It is settled that a court of equity will in certain circumstances grant rescission of a contract entered into as a result of a unilateral mistake of one of the parties, where that mistake has been produced by the conduct of the other party and where the parties can be put in status quo.

The general rule is stated as follows in an Annotation appearing in 59 A.L.R. 809:

"Equitable relief from a mutual mistake is frequently given by a reformation of the contract. But a contract will not be reformed for a unilateral mistake. Equitable relief may, however, be given from a unilateral mistake by a rescission of the contract. Essential conditions to such relief are: (1) The mistake must be of so grave a consequence that to enforce the contract as actually made would be unconscionable. (2) The matter as to which the mistake was made must relate to a material feature of the contract. (3) Generally the mistake must have occurred notwithstanding the exercise of ordinary diligence by the party making the mistake. (4) It must be possible to give relief by way of rescission without serious prejudice to the other party except the loss of his bargain. In other words, it must be possible to put him in status quo."

In 17 C.J.S. Contracts, § 143, p. 495, it is said:

"Ordinarily, a unilateral mistake affords no ground for avoiding a contract, although it may do so where it results in a complete difference in subject matter so as to preclude the existence of consideration, or where it is caused by, or known, to the other party."

And, while the mistake must have been caused by the other party, the conduct which produces the mistake need not be in itself fraudulent or inequitable. See Annotation, 59 A.L.R. 809, 817–818, and cases there cited including Hubbert v. Fagan, 99 Ark. 480, 138 S.W. 1001.

In Frazer v. State Bank of Decatur, 101 Ark. 135, 141 S.W. 941, there was a unilateral mistake on the part of plaintiff in accepting a certain instrument as a renewal of an earlier obligation, which mistake was caused by the action of agents of the defendant in failing to disclose that they had made a material alteration in the renewal instrument before executing it and delivering it to plaintiff. Plaintiff sued at law on the original undertaking and was permitted to prevail. The Supreme Court of Arkansas after pointing out that a contract cannot be reformed on account of a unilateral mistake went on to say (p. 141 of 101 Ark., p. 943 of 141 S.W.):

"* * * But a different question is presented where one of the parties to a contract seeks to have it rescinded because of a mistake on his part, for that makes only a case of there being no contract between the parties on account of the fact that there has not been a meeting of the minds of the contracting parties. * * * *"

Frazer, supra, was cited with approval in Fleischer v. McGehee, 111 Ark. 626, 163 S.W. 169. In Fleischer appellant purchased lands belonging to appellee

under the mistaken belief that he was purchasing adjoining lands belonging to a third person. While fraudulent misrepresentations on the part of appellee were alleged, they were not proven. Rescission was allowed, the Court pointing out that the mistake of appellant was not due to negligence, and that the status quo could be restored by a reconveyance of the lands. Both the Frazer case and the Fleischer case were cited in Murphy v. Steel, 169 Ark. 299, 274 S.W. 6, wherein rescission was granted on account of a unilateral mistake in the last description appearing in a deed.

Although this is not a suit for rescission as such, the Court is convinced that the principles and authorities above stated and cited are applicable and support the result here reached.

As has been shown, the policy in suit was issued as the result of a mistake on the part of McDonald going to the substance of the contract. This mistake was not due to negligence on the part of McDonald but was due to Wilmans' failure to make disclosures which he should have made, and the status quo can be restored by plaintiff's returning the premium paid by Mr. Wilmans.[6] It is true that Wilmans will lose the benefit of his insurance protection, but that loss is due to his own failure to make disclosure, and it is but just that he should bear that loss. The American Laundry Machinery Co. v. Whitlow, 198 Ark. 175, 127 S.W.2d 817.

## V.

Coming now to the claims of post-accident waiver and estoppel, counsel for defendants at the conclusion of the testimony requested the Court to propound an interrogatory and to give instructions based on the contention that after the accident and with full knowledge of the facts plaintiff waived any defects in the policy and elected to treat it as a valid and subsisting obligation as of the time of the happening of the accident. The Court denied those requests on the ground that there was no jury issue as to post-accident waiver or estoppel. The Court adheres to that view.

■ The contention in question is based on the fact that shortly after the accident representatives of the plaintiff made a preliminary investigation in the course of which plaintiff obtained knowledge of the interest of Ramirez in the truck and of the uses to which he had put the truck but did not deny coverage until January 1962. It is also contended that prior to the repudiation of liability, another renewal policy written on the same terms and at the same rate was issued with respect to the year ending November 19, 1962.

The Court does not think that those facts are sufficient to make out a jury case of waiver or estoppel. There is nothing to indicate that plaintiff's representatives in undertaking a preliminary investigation of the accident, in the course of which investigation facts came to light which indicated an absence of coverage, intended to recognize coverage if none in fact existed. The period of time which elapsed between the discovery of the facts and the final repudiation of liability was not of great duration, and neither the lapse of time nor anything said or done by plaintiff's representatives worked to the prejudice of any of the defendants or caused them to change their position in any way.

As to the issuance of the final renewal policy, the Court sees nothing and does not think that the jury could have seen anything in that act which would indicate a recognition of the validity of the preceding policy, and the validity of the last policy certainly did not depend upon the validity of its predecessor. It is somewhat strange that the final policy was issued at all since the evidence indicated that the truck had been demolished in the accident. There are, however, at least two possible explanations: (1) that the policy had been writ-

---

6. The complaint alleges tender to Wilmans of the premium paid and refusal of that tender. This is admitted by Mr. Wilmans.

ten and placed in the Wilmans file prior to the accident; and (2) that if the final policy was not issued until after the accident, still as of that time the truck, for whatever it was worth, was in the possession of Mr. Wilmans who had in effect repossessed it.

Aside from the foregoing, however, there is a more basic reason for rejecting the contention now under consideration. It is familiar law in Arkansas, as elsewhere, that while breaches of policy conditions or defenses which would be available to an insurance company to defeat initial existing coverage can be waived by the insurer or the insurer may be estopped from asserting such breaches or defenses, neither waiver nor estoppel can be so employed as to create initial coverage which did not exist theretofore. Bankers National Insurance Co. v. Hemby, 217 Ark. 749, 233 S.W.2d 637; Metropolitan Life Insurance Co. v. Stagg, 215 Ark. 456, 221 S.W.2d 29; Hartford Fire Insurance Co. v. Smith, 200 Ark. 508, 139 S.W.2d 411; John Hancock Mutual Life Insurance Co. v. Henson, 199 Ark. 987, 136 S.W.2d 684; Mutual Benefit Health & Accident Association v. Moore, 196 Ark. 667, 119 S.W.2d 499; Miller v. Illinois Bankers Life Association, 138 Ark. 442, 212 S.W. 310, 7 A.L.R. 378; Standard Accident Insurance Co. v. Roberts, 8 Cir., 132 F.2d 794; Montgomery v. M. F. A. Mutual Insurance Co., 8 Cir., 250 F.2d 357; Travelers Insurance Co. v. Sindle, W.D. Ark., 186 F.Supp. 8; 29A Am.Jur., Insurance, §§ 1014 and 1135. Since in the Court's view the policy was ineffective during its term, it cannot be vitalized by waiver or estoppel.

## VI.

What has been said up to this point is dispositive of the entire case. However, in the interest of completeness brief reference will be made to plaintiff's contention that even if it is liable under the liability coverages of the policy, it is not liable under the collision coverage because of the provisions of Exclusion "k." The Court agrees.

Exclusion "k" provides that the collision coverage shall not apply if the truck was or became subject to any "bailment lease, conditional sale, purchase agreement, mortgage or other encumbrance" not specifically described in the policy. Even if the Wilmans-Ramirez transaction did not amount to a conditional sale, it was at least a "purchase agreement" or some other "encumbrance," and the exclusion relied upon by plaintiff would be applicable.

An appropriate judgment will be entered. Costs will go against the defendants.